Michael K. Plimack (SBN 133869)
mplimack@cov.com
Dale A. Rice (SBN 146249)
drice@cov.com
Nitin Subhedar (SBN 171802)
nsubhedar@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:     (415) 591-6000
Facsimile:      (415) 591-6091

TESS HAMILTON (Bar No. 279738)
tahamilton@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
Telephone:     (650) 632-4700
Facsimile:      (650) 632-4800

Bradley K. Ervin (Admitted *Pro Hac Vice*)
Daniel E. Valencia (Admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
Telephone:     (202) 662-6000
Facsimile:      (202) 662-6291

*Attorneys for Defendants*
*Tessera, Inc., Tessera Technologies,*
*Inc., and Invensas Corporation*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>TESSERA, INC., TESSERA TECHNOLOGIES, INC., and INVENSAS CORPORATION,<br><br>Defendants. | Civil Action No. 5:17-CV-05888-BLF<br><br>**TESSERA DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) AND SPECIAL MOTION TO STRIKE COMPLAINT**<br><br>Date:         December 21, 2017<br>Time:        9:00 a.m.<br>Location:    San Jose Courtroom 3<br>Judge:       Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ 1

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 4

    A.    The ITC Proceeding, The First Filed Delaware District Court Action, And Broadcom's Exhaustion Affirmative Defense Asserted In Both Proceedings ....... 4

    B.    TSMC's Complaint ................................................................................ 5

    C.    The Remainder Of The ITC Proceeding .................................................. 6

ARGUMENT .............................................................................................................. 7

I.    TSMC Has Not Established Subject-Matter Jurisdiction ..................................... 7

    A.    TSMC Has Not Established Article III Standing ........................................ 7

        1.    TSMC Has Not Shown Redressability ...................................... 8

        2.    TSMC Has Not Shown Causation ........................................... 10

    B.    TSMC Has Not Established A Statutory Basis For Subject-Matter Jurisdiction . 11

        1.    There Is No Patent Law Jurisdiction ........................................ 11

        2.    There Is No Federal Question Jurisdiction ................................ 12

        3.    There is No Diversity Jurisdiction ........................................... 12

II.    TSMC's Complaint Should Be Dismissed Because It Improperly Attacks Protected Activity ................................................................................................ 14

    A.    The *Noerr-Pennington* Doctrine Bars TSMC's Challenge To Tessera's Arguments Made In Exercise Of Its First Amendment Right To Petition The ITC ................................................................................................ 14

    B.    California's Litigation Privilege Also Bars TSMC's Requested Order Restraining Tessera's Petitioning Conduct .............................................. 16

    C.    Motion To Strike:  TSMC's Complaint Should Be Stricken Under California's Anti-SLAPP Statute .......................................................................... 17

III.    Dismissal Of TSMC's Declaratory Judgment Action Is Warranted Under *Wilton/Brillhart* Abstention .................................................................... 20

CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Ajetunmobi v. Clarion Mortg. Capital, Inc.*,
595 F. App'x 680 (9th Cir. 2014) ................................................................. 12

*Allen v. Wright*,
468 U.S. 737 (1984)......................................................................................... 8, 10

*Aluminum Housewares Co. v. Chip Clip Corp.*,
609 F. Supp. 358 (E.D. Mo. 1984)................................................................. 22

*Anderson Plant LLC v. Batzer Constr., Inc.*,
No. 15-cv-01966, 2015 WL 4572294 (N.D. Cal. July 29, 2015) ................. 13, 14

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015).......................................................................... 10

*AT&T Mobility LLC v. Yeager*,
No. 13-cv-00007, 2017 WL 4365954 (E.D. Cal. Sept. 29, 2017) ................. 18, 19

*BE & K Constr. Co. v. N.L.R.B.*,
536 U.S. 516 (2002) ........................................................................................ 16

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
886 F. Supp. 377 (S.D.N.Y. 1995) ................................................................ 15, 16

*Blank v. Kirwan*,
39 Cal. 3d 311 (Cal. 1985)............................................................................. 16

*Briggs v. Eden Counsel for Hope & Opportunity*,
19 Cal. 4th 1106 (Cal. 1999).......................................................................... 18

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)........................................................................................ 21

*Cellco Partnership v. Broadcom Corp.*,
227 F. App'x 889 (Fed. Cir. 2007) ................................................................. 22

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)........................................................................................ 11

*Coal. of Clergy, Lawyers & Professors v. Bush*,
310 F.3d 1153 (9th Cir. 2002) ........................................................................ 11

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)........................................................................................ 16

*EMC Corp. v. Chevedden*,
4 F. Supp. 3d 330 (D. Mass. 2014) ................................................................ 9

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*,
604 F.3d 983 (7th Cir. 2010) .......................................................................... 21

*ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co., KG,*
   541 F.3d 1373 (Fed. Cir. 2008) ...................................................................................... 11

*Feldman v. 1100 Park Lane,*
   160 Cal. App. 4th 1467 (Cal. Ct. App. 2008) .................................................................. 17

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ........................................................................................................... 8

*Golden Eagle Ins. Co. v. Travelers Companies,*
   103 F.3d 750 (9th Cir. 1996) ........................................................................................... 22

*Gov't Employees Ins. Co. v. Dizol,*
   133 F.3d 1220 (9th Cir. 1998) ......................................................................................... 22

*Guerneville Bus. Corp. v. Boasberg,*
   No. 11-cv-4913, 2012 WL 1606628 (N.D. Cal. May 8, 2012) ......................................... 12

*Hunt v. Wash. State Apple Adver. Comm'n,*
   432 U.S. 333 (1977) ......................................................................................................... 13

*Hurley v. Columbia Cas. Co.,*
   976 F. Supp. 268 (D. Del. 1997) ..................................................................................... 21

*Huth v. Hartford Ins. Co.,*
   298 F.3d 800 (9th Cir. 2002) ........................................................................................... 22

*In re Ford Motor Co./Citibank S.D., N.A.,*
   264 F.3d 952 (9th Cir. 2001) ........................................................................................... 13

*Jordan v. Presidio Tr.,*
   No. 16-cv-02122, 2017 WL 396169 (N.D. Cal. Jan. 30, 2017) ......................................... 7

*Kaiser Found. Health Plan, Inc. v. Abbot Labs., Inc.,*
   552 F.3d 1033 (9th Cir. 2009) ......................................................................................... 15

*Kaneka Corp. v. Xiamen Kingdomway Gr. Co.,*
   No. 11-cv-02389, 2014 WL 12577150 (C.D. Cal. Feb. 24, 2014) ................................... 17

*Kanter v. Warner-Lambert Co.,*
   265 F.3d 853 (9th Cir. 2001) ........................................................................................... 12

*Kearny v. Foley & Lardner, LLP,*
   590 F.3d 638 (9th Cir. 2009) ........................................................................................... 19

*Ketchum v. Moses,*
   24 Cal. 4th 1122 (Cal. 2001) ........................................................................................... 20

*Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.,*
   599 F.3d 1277 (Fed. Cir. 2010) ....................................................................................... 11

*Leu v. Int'l Boundary Comm'n,*
   605 F.3d 693 (9th Cir. 2010) ............................................................................................. 8

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*,
   799 F.2d 1312 (9th Cir. 1986) .................................................................................................. 12

*LSI Computer Sys., Inc. v. U.S. Int'l Trade Comm'n*,
   832 F.2d 588 (Fed. Cir. 1987).................................................................................................. 6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................................... 7, 8, 10

*Mainini v. Johnson*,
   No. 14-cv-03205-BLF, 2015 WL 1225633 (N.D. Cal. Mar. 17, 2015)........................... 22, 23

*Mann v. Unum Life Ins. Co. of Am.*,
   505 F. App'x 854 (11th Cir. 2013) ......................................................................................... 14

*Martinez v. USAA Fed. Sav. Bank*,
   683 F. App'x 584 (9th Cir. 2017) ........................................................................................... 12

*Matson v. Dvorak*,
   40 Cal. App. 4th 539 (Cal. Ct. App. 1995) ............................................................................ 18

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007).................................................................................................................. 8

*Meza v. Meza*,
   No. 12-cv-01777, 2013 WL 2338126 (C.D. Cal. May 25, 2013) ........................................... 17

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ................................................................................................... 4

*Millepede Mktg. Ltd. v. Harsley*,
   928 F. Supp. 2d 109 (D.D.C. 2013) ...................................................................................... 11

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012)............................................................................................................... 12

*Muhammed v. Berreth*,
   No. 12-cv-02407, 2012 WL 4838427 (N.D. Cal. Oct. 10, 2012) .......................................... 12

*Nissan N. Am., Inc. v. Andrew Chevrolet, Inc.*,
   589 F. Supp. 2d 1036 (E.D. Wis. 2008)................................................................................ 21

*Nova Health Sys. v. Gandy*,
   416 F.3d 1149 (10th Cir. 2005) ............................................................................................... 8

*OG Int'l, Ltd. v. Ubisoft Ent'mt*,
   No. 11-cv-04980-CRB, 2012 WL 4809174 (N.D. Cal. Oct. 9, 2012)............................... 15, 16

*Or. Ass'n of Homes for Aging, Inc. v. State of Or. By & Through Dep't of Human Res.*,
   5 F.3d 1239 (9th Cir. 1993) ..................................................................................................... 4

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*,
   136 Cal. App. 4th 464 (Cal. Ct. App. 2006) .......................................................................... 20

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993) .................................................................................................. 16

*Qualcomm, Inc. v. GTE Wireless, Inc.*,
    79 F. Supp. 2d 1177 (S.D. Cal. 1999) ..................................................................... 21

*R.R. St. & Co. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) ................................................................................... 23

*Rapoport v. Rapoport*,
    416 F.2d 41 (9th Cir. 1969) ..................................................................................... 14

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ................................................................................... 17

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (9th Cir. 2011) ................................................................................. 19

*Ross v. Stranger*,
    No. 11-cv-00094, 2011 WL 1431517 (N.D. Cal. Apr. 14, 2011) ........................... 14

*Rubin v. Green*,
    4 Cal. 4th 1187 (Cal. Ct. App. 1993) ...................................................................... 17

*Saad v. U.S. Dep't of Homeland Sec.*,
    No. 09-cv-8428, 2011 WL 2555290 (C.D. Cal. June 27, 2011) .............................. 12

*Semiconductor Energy Lab. Co. v. Nagata*,
    706 F.3d 1365 (Fed. Cir. 2013) ............................................................................... 12

*Silberg v. Anderson*,
    50 Cal. 3d 205 (Cal. 1990) ...................................................................................... 17

*Simmons v. Allstate Ins. Co.*,
    92 Cal. App. 4th 1068 (Cal. Ct. App. 2001) ............................................................ 19

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ................................................................................................. 12

*Sosa v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................... 7, 8

*Swanson Grp. Mfg., LLC v. Jewell*,
    790 F.3d 235 (D.C. Cir. 2015) ................................................................................... 8

*Tillman v. Tillman*,
    No. 09-cv-02017, 2009 WL 10655839 (C.D. Cal. Dec. 1, 2009) ........................... 12

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999) ................................................................................... 20

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*,
    389 U.S. 217 (1967) ........................................................................................................ 14

*United Nat. Ins. Co. v. R&D Latex Corp.*,
    242 F.3d 1102 (9th Cir. 2001) ........................................................................................ 22

*United States v. Howard*,
    381 F.3d 873 (9th Cir. 2004) ............................................................................................ 5

*United States v. Navarro*,
    800 F.3d 1104 (9th Cir. 2015) .......................................................................................... 5

*Varian Med. Sys., Inc. v. Delfino*,
    35 Cal. 4th 180 (Cal. 2005) ............................................................................................ 19

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ........................................................................................................ 12

*WBI, Inc. v. Zurich Am. Ins. Co.*,
    No. 16-cv-4852, 2016 WL 4528956 (C.D. Cal. Aug. 30, 2016) ...................................... 14

*West v. Lynch*,
    845 F.3d 1228 (D.C. Cir. 2017) ..................................................................................... 9, 10

*Westlands Water Dist. Distrib. Dis. v. Nat. Res. Def. Council, Inc.*,
    276 F. Supp. 2d 1046 (E.D. Cal. 2003) .......................................................................... 15

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ..................................................................................................... 3, 21

*Winters v. Jordan*,
    No. 09-cv-00522, 2010 WL 2838634 (E.D. Cal. July 20, 2010) ..................................... 19

**Statutes**

19 U.S.C. § 1337 ...................................................................................................... 6, 9, 23

28 U.S.C. § 1331 ......................................................................................................... 11, 12

28 U.S.C. § 1332 ......................................................................................................... 11, 12

28 U.S.C. § 1338 .............................................................................................................. 11

28 U.S.C. §§ 2201-2202 ......................................................................................... 2, 12, 22

Cal. Civ. Code § 47 .......................................................................................................... 17

Cal. Civ. Proc. Code § 425.16 ............................................................................. 1, 18, 19, 20

**Other Authorities**

"In the Matter of Certain Optical Disk Controller Chips and Chipsets and Products Containing Same,"
    Inv. No. 337-TA-506, Commission Opinion (ITC Sept. 28, 2005) .................................... 9

Notice of Request for Statements on the Public Interest, 82 Fed. Reg. 32,584 (July 14, 2017) ............... 23

Schedule for Filing Written Submissions on the Issues Under Review and on Remedy, the Public Interest, and Bonding, 82 Fed. Reg. 46,519 (Oct. 5, 2017) ................................................ 23

Solicitation of Comments Relating to the Public Interest, 81 Fed. Reg. 33,707 (May 27, 2016) ........... 23

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................................ 1, 7

Federal Rule of Civil Procesure 12(b)(6) ........................................................................................ 1, 19

Federal Rule of Evidence 501 ........................................................................................................... 17

**Regulations**

19 C.F.R. § 210.44 ............................................................................................................................. 9

19 C.F.R. § 210.49(c) ......................................................................................................................... 9

19 C.F.R. § 210.78(b) ......................................................................................................................... 9

## NOTICE OF MOTION

Please take notice that on December 21, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, in Courtroom 3 of the United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendants Tessera, Inc., Tessera Technologies, Inc., and Invensas Corporation (collectively "Tessera") will, and hereby do, move the Court to dismiss the Complaint filed by Plaintiff Taiwan Semiconductor Manufacturing Company Limited ("TSMC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim for relief, and to strike the Complaint pursuant to California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16.

## INTRODUCTION

TSMC asks the Court to issue an unprecedented judicial declaration dictating what Tessera can and cannot argue in another litigation about a non-party's (*i.e.*, Broadcom's) affirmative defense to a claim of patent infringement. TSMC suggests that if it can obtain the gag order it seeks, it might end up losing less business from Broadcom, depending upon how the other tribunal—the U.S. International Trade Commission ("ITC")—ultimately rules. Federal district courts, however, do not have subject-matter jurisdiction to issue advisory opinions about a non-party's affirmative defenses asserted in another proceeding. Moreover, both federal and state laws prohibit the restraint on constitutionally-protected speech that TSMC asks this Court to impose. Finally, even if this Court did have jurisdiction to do what TSMC asks, the Supreme Court has held that the Declaratory Judgment Act (the ostensible basis for TSMC's only asserted claim) is expressly ***permissive*** in nature and should only be exercised when to do so would constitute "wise judicial administration." It would not be wise judicial administration for this Court to blindly dictate which arguments can or cannot be made in another litigation that has already run its course through trial before another judge, resulting in a 264-page determination rejecting the very arguments, on the same facts, that TSMC raises again here. For each of these reasons, independently, the Complaint should be dismissed.

First, the Court does not have subject-matter jurisdiction because TSMC lacks Article III standing. To have standing to sue, TSMC must prove that it has suffered an injury-in-fact that can be redressed by the requested relief. Here, the "injury" that TSMC complains of is that an Administrative

1

Law Judge ("ALJ") supposedly misinterpreted a contract, and the alleged future "injury" is that the full International Trade Commission may affirm the ALJ's ruling and, depending upon numerous other contingencies, an import ban may ultimately be imposed against non-party Broadcom. However, this Court is not an appellate court that can reverse determinations made by the ALJ or the full Commission; that is the province of the Federal Circuit. In addition, neither the ALJ nor the Commission are parties to this action. Thus, the alleged "injuries," even if they were legally cognizable, would not be redressable by this Court. TSMC's recourse is at the ITC, followed by the Federal Circuit.

Implicitly recognizing that the Court cannot directly interfere with the ITC itself, TSMC instead seeks to interfere with Tessera's ability to defend its rights in the ITC by asking this Court, *inter alia*, to "declar[e] that Tessera is not entitled to continue to participate in the ITC Proceeding" to enforce what the ALJ has already held, and to "order[] Tessera not to oppose a motion to stay any ITC exclusion order or cease and desist order." Compl. at 17 (Prayer for Relief). Although the Complaint cites to numerous cases, not one of them suggests that this Court has the authority (or that it would be advisable for this Court) to dictate the conduct of an ITC proceeding, including which motions can be opposed and what can be said in opposition to them. TSMC cites no authority because there is none. The fact is that the ALJ has ruled, and the Commission will have already issued its Final Determination on review of that ruling by December 1, 2017. And if the Commission agrees with the ALJ and the public interest factors being litigated before it, the Commission can impose an import ban. A gag order against Tessera will not change any of this, and therefore the relief requested will not redress the claimed injury (even if it was, contrary to fact, a legally cognizable injury).

In addition to lacking standing, TSMC has no statutory basis for federal subject-matter jurisdiction. There is no federal question, as TSMC only asserts a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which does not independently confer federal jurisdiction. TSMC essentially seeks to dispose of an affirmative defense in another proceeding based on state law contract interpretation principles. Nor is there an appropriate showing of an amount in controversy for purposes of diversity jurisdiction. The amount in controversy must be measured based on the object of the litigation itself, and here TSMC only asks for a judicial declaration restraining Tessera's speech. TSMC is not claiming that Tessera owes it any money, or any other direct monetary loss from Tessera's

assertion of its rights that would be sufficient to establish an amount in controversy. Although TSMC claims that it may ultimately lose business if the Commission affirms the ALJ's ruling, Broadcom fails to post a bond, the President does not overrule the Commission, and neither the ITC nor the Federal Circuit stay any exclusion order pending appeal, this type of consequential, collateral harm is not the type of loss that may be counted as part of the "amount in controversy" for purposes of establishing diversity jurisdiction.

Even if the Court did have subject-matter jurisdiction, the case still should be dismissed. The *Noerr-Pennington* doctrine, California's litigation privilege, and California's anti-SLAPP statute each bar TSMC's attempt to restrain Tessera's exercise of its constitutionally-protected right to petition the ITC for protection of Tessera's interests. Courts regularly dismiss complaints targeting protected activity on all three grounds, and this Court should do the same.

Finally, the only claim TSMC has brought is under the Declaratory Judgment Act. The Supreme Court has instructed that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," and that in the context of Declaratory Judgment Act cases, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995). It would neither be practical, nor wise judicial administration, for this Court to dictate what can be argued to the ITC or to adjudicate the correctness of an ALJ's contract interpretation currently under review by the Commission (and that will undoubtedly also be reviewed by the Federal Circuit). This is particularly so here, as TSMC knew full well that the ITC was deciding the issue that it raises now, but instead of intervening as the ITC repeatedly invited, TSMC waited until it saw how the ALJ decided the issue, and only when the issue was decided in a manner adverse to TSMC did TSMC file this action. Under these circumstances, abstention is the most sensible course.

For each of these reasons independently—lack of standing, lack of statutory basis for subject-matter jurisdiction, violation of the *Noerr-Pennington* doctrine, violation of California's litigation privilege and anti-SLAPP law, and prudential abstention—the Complaint should be dismissed.

## BACKGROUND

### A.     The ITC Proceeding, The First Filed Delaware District Court Action, And Broadcom's Exhaustion Affirmative Defense Asserted In Both Proceedings[1]

U.S. Patent No. 6,849,946 (the "'946 Patent") is one of three patents currently at issue in an ITC proceeding entitled "In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same," Inv. No. 337-TA-1010 (the "ITC Proceeding"). Compl., ¶¶ 4, 36. Tessera instituted the ITC Proceeding on May 23, 2016, against Broadcom and certain Broadcom customers, asserting infringement of the '946 Patent (among others). *Id.*; *see also* In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same (Inv. No. 337-TA-1010); *Or. Ass'n of Homes for Aging, Inc. v. State of Or. By & Through Dep't of Human Res.*, 5 F.3d 1239, 1243 n.2 (9th Cir. 1993) (appropriate to take judicial notice of records and reports of administrative agencies).

In the ITC Proceeding, Broadcom asserted an affirmative defense of patent exhaustion. Compl., ¶ 5. In particular, Broadcom contended that: (i) Tessera acquired the '946 Patent from Cypress Semiconductor and was bound by Cypress' agreements as to that patent; (ii) Cypress had entered into a covenant not to sue ("CNS") with TSMC; (iii) this CNS was broad enough to encompass TSMC's sales to Broadcom; and therefore (iv) Broadcom has a patent exhaustion defense to Tessera's claim for patent infringement for products purchased from TSMC. *Id.*, ¶¶ 5, 26–44.

Tessera also filed a parallel patent infringement action in the U.S. District Court for the District of Delaware against Broadcom (the "Delaware Action"). *See Tessera, Inc., et al. v. Broadcom Corp.*, Case No. 1:16-cv-00379-LPS-CJB (D. Del.); Compl., ¶ 36. The Delaware Action was filed on May 23, 2016. Complaint, *Tessera, Inc. et al v. Broadcom Corp.*, Case No. 1:16-cv-00379-LPS-CJB (D. Del. May 23, 2016), Dkt. 1. As in the ITC Proceeding, in the Delaware Action "Tessera accuses Broadcom of infringing the '946 patent by importing and selling products derived from wafers made by TSMC for Broadcom and sold to Broadcom. Broadcom countered that Tessera's allegations are barred by the doctrine of patent exhaustion." Compl., ¶ 36. Accordingly, Broadcom's affirmative defense of patent

---

[1] "On a motion to dismiss," it is appropriate for the court to "take judicial notice of matters of public record outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (citations omitted).

1   exhaustion is already the subject of both a currently pending ITC Proceeding and a first-filed district

2   court action in Delaware.

3         After Tessera filed the Delaware Action, Broadcom filed an unopposed motion to stay that case

4   so that the ITC Proceeding could first be completed. Motion to Transfer Case to Northern District of

5   California and Unopposed Motion to Stay, *Tessera, Inc., et al. v. Broadcom Corp.*, Case No. 1:16-cv-

6   00379-LPS-CJB (D. Del. July 18, 2016), Dkt. 12; *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th

7   Cir. 2004) (appropriate to take judicial notice of court records). The District of Delaware granted

8   Broadcom's motion and stayed the case until the completion of the ITC Proceeding. Oral Order,

9   *Tessera, Inc., et al. v. Broadcom Corp.*, Case No. 1:16-cv-00379-LPS-CJB (D. Del. Sept. 9, 2016);

10  *United States v. Navarro*, 800 F.3d 1104, 1109 n.3 (9th Cir. 2015) (appropriate to take judicial notice of

11  court orders).

12        TSMC is not a party to either the Delaware Action or the ITC Proceeding (and never sought to

13  intervene in either proceeding, as it could have), and Broadcom is not a party to this case. Nonetheless,

14  TSMC's Complaint asks this Court to adjudicate the merits of Broadcom's patent exhaustion affirmative

15  defense asserted in both of those other proceedings. *See* Compl., ¶¶ 7, 36.

16        **B.     TSMC's Complaint**

17        Following more than a year's worth of discovery, pretrial proceedings, and a full trial on the

18  merits, the ALJ rendered a 264-page written decision that, among other things, found that the '946

19  Patent is both valid and infringed, and rejected Broadcom's affirmative defense of patent exhaustion.

20  Dkt. 9-1 (Inv. No. 337-TA-1010, Initial Determination on Violation of Section 337) at 62–68. It was

21  only after this adverse decision that TSMC brought this action, which was more than fifteen months

22  after the ITC Proceeding was initiated and the Delaware Action was filed. In the Complaint, TSMC asks

23  this Court to "declare" that the ALJ incorrectly adjudicated Broadcom's patent exhaustion defense:

>       TSMC seeks a declaration that the incorrect interpretation of the [CNS] argued by Tessera
>       and accepted by the ALJ—that sales by TSMC to Broadcom are not covered by the
>       [CNS]—was an erroneous basis for rejecting Broadcom's patent exhaustion defense.

26  Compl., ¶ 7.

1   TSMC apparently recognizes that this Court cannot act as the appellate court for ALJ rulings or

2   ITC opinions. Therefore, rather than ask this Court to overturn the ITC outright, TSMC attempts to

3   obtain the same effect by asking this Court to enjoin Tessera from making certain arguments in the ITC

4   proceeding going forward. *See id.* at 17 (Prayer for Relief).

5   TSMC claims that this unprecedented prospective relief is warranted because "[t]he initial

6   determination by the ALJ is already harming TSMC and its customer relations, and will continue to do

7   so unless it is corrected," and TSMC's "future revenue from Broadcom is now in jeopardy due to the

8   Initial Determination." *Id.*, ¶ 46. TSMC further alleges that relief against Tessera is appropriate because

9   "Tessera has violated TSMC's legal rights by asserting a faulty interpretation of the scope of the [CNS],

10  by continuing to pursue the ITC Proceeding, and by seeking an import exclusion order and a cease and

11  desist order against products from wafers that TSMC made for and sold to Broadcom." *Id.*, ¶ 53; *see

12  also id.*, ¶ 59 (alleging that "Tessera has asserted a position regarding the scope and effect of the [CNS]

13  . . . resulting in an Initial Determination that rests on an erroneous interpretation of the [CNS]").

14      **C.      The Remainder Of The ITC Proceeding**

15      The full Commission (currently made up of four Commissioners) is in the process of reviewing

16  the ALJ's decision, has already received complete briefing from the parties, and is set to issue its ruling

17  on December 1, 2017. *See* Compl., ¶ 45. If the Commission reverses the ALJ, then this case will

18  effectively be moot as there will no longer be any ALJ ruling to "declare" incorrect. If instead the

19  Commission affirms the ALJ, then it will mean that TSMC is asking the Court not only to reverse an

20  administrative law judge, but the full Commission.

21      After the Commission has ruled, Broadcom will have an opportunity to continue importing

22  products into the United States if it posts a bond while it seeks Presidential review. *Id.* Only if the

23  President declines to intervene will the ITC's remedy go into full effect. At that point, Broadcom—and

24  even TSMC—could appeal the Commission's ruling to the Federal Circuit. *See* 19 U.S.C. § 1337(c)

25  ("Any person adversely affected by a final determination of the Commission . . . may appeal such

26  determination . . . to the United States Court of Appeals for the Federal Circuit . . . ."); *LSI Computer

27  Sys., Inc. v. U.S. Int'l Trade Comm'n*, 832 F.2d 588, 590–91 (Fed. Cir. 1987) (permitting entities that

28  were not a party to the ITC proceeding to appeal the resulting ITC determination to the Federal Circuit).

1   Broadcom will also be able to request a stay of the ITC's orders, pending appeal to the Federal Circuit,

2   from both the ITC and the Federal Circuit.

3                                           **ARGUMENT**

4   **I.      TSMC Has Not Established Subject-Matter Jurisdiction**

5          The "first and fundamental" requirement of any federal lawsuit is subject matter jurisdiction,

6   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); and once jurisdiction is challenged under

7   Rule 12(b)(1), the plaintiff bears the burden of proving that there is jurisdiction. *Jordan v. Presidio Tr.*,

8   No. 16-cv-02122, 2017 WL 396169, at *2 (N.D. Cal. Jan. 30, 2017). TSMC cannot satisfy its burden for

9   two reasons. First, TSMC has no standing because the relief that it seeks (namely, a restraint on

10  Tessera's speech in the ITC) will not redress the purported injury TSMC has suffered or supposedly will

11  suffer (namely, an adverse decision by the ALJ, affirmance by the ITC, and imposition of a remedy by

12  the ITC). Whatever Tessera does or does not say in future motions before the ITC, the ALJ has already

13  ruled and it will be up to the ITC—not Tessera—to decide the propriety of an import ban. This is a

14  federal agency charged with oversight over international trade, and if it determines that an import ban is

15  in the best interests of the United States, none of the declarations or injunctions that TSMC seeks will

16  force the ITC to rule how TSMC wants it to rule.

17         In addition to lacking standing, TSMC also cannot establish any of the statutory bases for federal

18  subject-matter jurisdiction. There is no claim for patent infringement or any other federal question, nor

19  can TSMC satisfy the amount in controversy requirement for diversity jurisdiction. This also means that

20  subject-matter jurisdiction is absent.

21  **A.      TSMC Has Not Established Article III Standing**

22         Standing is a constitutional prerequisite to federal judicial power, "an essential and unchanging

23  part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

24  (1992). For a plaintiff to have standing, (1) "there must be alleged (and ultimately proved) an injury in

25  fact—a harm suffered by the plaintiff"; (2) "there must be causation—a fairly traceable connection

26  between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "there must be

27  redressability—a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S.

28  at 102–03 (quotations omitted). These requirements apply to Declaratory Judgment Act cases.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). Here, TSMC has not satisfied (and cannot satisfy) its burden of proving either redressability or causation.

### 1.   TSMC Has Not Shown Redressability

Redressability examines the "connection between the alleged injury and the judicial relief requested." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). The mere fact that a court has the power to issue the relief requested is irrelevant absent direct redress of the plaintiff's asserted injuries. In other words, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co.*, 523 U.S. at 107. Here, redressability is lacking because, even if the Court issued the free-speech-suppressing declarations and injunctions TSMC seeks, they would not secure the outcome that TSMC seeks (*i.e.*, a win for Broadcom in the ITC Proceeding).

TSMC claims that "[t]he Initial Determination by the ALJ is already harming TSMC . . . and will continue to do so unless it is corrected." Compl., ¶ 46. Similarly, TSMC claims that its "future revenue from Broadcom is now in jeopardy due to the Initial Determination." *Id. See also id.*, ¶¶ 7, 44. Thus, TSMC admits that it is ***the ALJ and the ITC*** that are supposedly harming TSMC. However, neither the ALJ nor the ITC are parties to this action, nor can this Court reverse their rulings. Indeed, no government agency or official at any stage of TSMC's alleged chain of injury—from the Initial Determination to a potential future, final exclusion order—are parties to this case. Under these circumstances, redressability is lacking. *See Lujan,* 504 U.S. at 570–71 (finding no redressability because agencies were not parties to the case and would not be bound by district court's decision); *see also Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) ("It is not permissible under Article III for us to give an essay-like lecture to the executive branch in a decision that will not bind it because it is not a party to this litigation."); *Swanson Grp. Mfg., LLC v. Jewell*, 790 F.3d 235, 243–44 (D.C. Cir. 2015) (holding that plaintiff did not establish redressability where requested relief "still may not" obviate the alleged threat to its business); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) ("Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive . . . effect of the opinion explaining the exercise of its power.") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring)); *EMC Corp. v.*

*Chevedden*, 4 F. Supp. 3d 330, 338–39 (D. Mass. 2014) (finding absence of redressability because requested declaratory judgment would not bind non-parties responsible for alleged harm).

Because TSMC cannot use this Court to reverse the ALJ or the ITC, TSMC instead asks the Court to restrain Tessera from speaking in the ITC Proceeding in connection with yet-to-be filed motions and appeals. However, even putting aside the fundamental impropriety in restraining Tessera from such protected speech (discussed further below), the relief TSMC seeks would not protect TSMC from the supposed injury it might suffer from the ALJ and the ITC because they can still impose whatever relief they wish regardless of what Tessera argues. *See West v. Lynch*, 845 F.3d 1228, 1236 (D.C. Cir. 2017) (when challenged conduct "is at best an indirect or contributing cause of the plaintiff's injury—*i.e.*, . . . the injury may or may not follow from the conduct, based on a chain of contingencies— the plaintiff faces an uphill climb in pleading and proving redressability") (quotation and citation omitted).

TSMC does not allege any prospective action **by Tessera** necessary for the Commission to issue an exclusion order or for the U.S. Customs and Border Patrol to block imports of the infringing products. In fact, both can go forward automatically, with or without Tessera's input.[2] After the ITC has spent the time and resources over the past year and a half to conduct a full investigation and concluded that a ban of infringing, foreign-made imports is in the United States' best interests, it may well proceed with that remedy regardless of what this Court rules. *See*, *e.g.*, "In the Matter of Certain Optical Disk Controller Chips and Chipsets and Products Containing Same," Inv. No. 337-TA-506, Commission Opinion (ITC Sept. 28, 2005) (including infringing chip in exclusion order even though "complainants withdrew their infringement allegations as to that chip"). Further, the appellee in an appeal from a Section 337 decision is the Commission itself, not the opposing party in the underlying investigation. The Commission is represented by its General Counsel's office, which defends the ITC's decision with

---

[2] *See*, *e.g.*, 19 U.S.C. § 1337(d) ("If the Commission determines, as a result of an investigation under this section, that there is a violation . . ., it **shall direct** that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States . . . ." (emphasis added)); 19 C.F.R. § 210.49(c) ("Exclusion orders . . . shall be enforceable upon receipt of notice thereof by the Secretary of the Treasury."); *id.* § 210.78(b) ("The Commission **shall notify** the Secretary of the Treasury of any action . . . that results in a permanent or temporary exclusion of articles from entry . . . ." (emphasis added)); *id.* § 210.44 (authorizing the Commission to review an ALJ's initial determination "**on its own initiative**" (emphasis added)).

1   both briefs and with oral argument, whereas the prevailing party before the ITC normally needs to join

2   as an intervenor if it wishes to support the ITC's continuing work at that stage.

3   Consequently, the speculative link between the injury TSMC seeks to forestall (a loss in the ITC)

4   and the relief TSMC seeks from this Court (a prior restraint on Tessera's protected speech before the

5   ITC) is too remote to satisfy the redressability requirement. *See, e.g.*, *Lujan,* 504 U.S. at 561 ("[I]t must

6   be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.");

7   *West*, 845 F.3d at 1237 ("When conjecture is necessary, redressability is lacking."); *Arpaio v. Obama*,

8   797 F.3d 11, 21 (D.C. Cir. 2015) ("When considering any chain of allegations for standing purposes, we

9   may reject as overly speculative those links which are predictions of future events[,] especially future

10   actions to be taken by third parties . . . .") (citation omitted).

## 2.   TSMC Has Not Shown Causation

12   The causation requirement of Article III standing "examines the causal connection between the

13   assertedly unlawful conduct [of the defendant] and the alleged injury" to the plaintiff. *Allen*, 468 U.S. at

14   753. Here, TSMC's allegations make clear that its alleged injuries are not "fairly . . . trace[able] to the

15   challenged action of [Tessera]," but instead are "th[e] result [of] the independent action of some third

16   party not before the court"—which means causation is lacking. *Lujan*, 504 U.S. at 560 (citations

17   omitted). Indeed, TSMC contends that its alleged injuries are "due to" the ALJ's Initial Determination,

18   Compl., ¶ 46, and the Commission's potential acceptance of that decision, *id.* ¶ 45. *See also id.* ¶ 44

19   ("***[A]n incorrect interpretation in the ITC Proceeding*** of the scope and effect of the [CNS], urged by

20   Tessera, ***has caused Broadcom to face the prospect of a ban*** on imports of products made by TSMC."

21   (emphases added)). In other words, only the ITC's ultimate decision—not Tessera's participation in

22   upcoming motions that may or may not be filed—has caused or will cause harm to TSMC. *See Lujan*,

23   504 U.S. at 562 (causation lacking when alleged harm "depends on the unfettered choices made by

24   independent actors not before the courts and whose exercise of broad and legitimate discretion the courts

25   cannot presume either to control or to predict"); *Allen*, 468 U.S. at 758–59 ("[T]he indirectness of the

26   injury may make it substantially more difficult to meet the minimum requirement of Art. III.").

27

28

### B.   TSMC Has Not Established A Statutory Basis For Subject-Matter Jurisdiction

TSMC alleges jurisdiction pursuant to federal question (28 U.S.C. § 1331), diversity (28 U.S.C. § 1332), and patent law (28 U.S.C. § 1338(a)) jurisdiction. *See* Compl., ¶ 12. None of these purported bases for jurisdiction withstands scrutiny.

### 1.   There Is No Patent Law Jurisdiction

Federal district courts have jurisdiction in "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). An action arises under patent law when "a well-pleaded complaint establishes either that federal patent law creates the cause of action or . . . patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). TSMC's Complaint does not meet this standard. Patent law does not create TSMC's cause of action, nor is it an element of TSMC's sole claim for relief. Instead, TSMC asserts only a Declaratory Judgment Act cause of action, and asks this Court to interpret a contract under California state law contract interpretation principles. *See, e.g.*, Compl. ¶¶ 7, 29, 63. Because "the merits of [this] state-law claim may be resolved without reaching or addressing a federal patent law issue, . . . the latter issue is not necessarily raised, and the state-law claim falls outside the jurisdictional grant of 28 U.S.C. § 1338." *Millepede Mktg. Ltd. v. Harsley*, 928 F. Supp. 2d 109, 116 (D.D.C. 2013) (internal quotation marks omitted); *see also Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277, 1283–84 (Fed. Cir. 2010) (holding contract-law dispute over meaning and scope of patent license did not raise patent law question); *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co., KG*, 541 F.3d 1373, 1376–77 (Fed. Cir. 2008) (affirming dismissal of declaratory judgment claim raising patent exhaustion under license agreement for lack of patent law jurisdiction). It is also irrelevant that TSMC seeks to interpret the contract in light of a non-party's affirmative defense against a patent infringement claim in another case. *See Christianson*, 486 U.S. at 809 ("[A] case raising a federal patent-law defense does not, for that reason alone [arise under] patent law . . . ." (quotations omitted)); *Coal. of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ("[I]t is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties.").

### 2.     There Is No Federal Question Jurisdiction

Federal question jurisdiction (28 U.S.C. § 1331) requires "that 'federal law creates a private right of action and furnishes the substantive rules of decision.'" *Muhammed v. Berreth*, No. 12-cv-02407, 2012 WL 4838427, at *4 (N.D. Cal. Oct. 10, 2012) (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79 (2012)). However, it is well established that the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202)—which is the sole asserted basis for TSMC's claim—does not provide an independent basis for federal question jurisdiction. *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986); *Guerneville Bus. Corp. v. Boasberg*, No. 11-cv-4913, 2012 WL 1606628, at *2 (N.D. Cal. May 8, 2012). Nor does interpretation of a contract under state law principles. *See, e.g.*, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989). And the mere fact that TSMC seeks interpretation of the contract in connection with a patent-related defense asserted by a third party (Broadcom) in another proceeding does not present any federal question for this Court to answer. *See, e.g.*, *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1369–70 (Fed. Cir. 2013) (affirming dismissal for lack of subject-matter jurisdiction and refusing to create a federal cause of action under the Declaratory Judgment Act for a federal patent law defense).[3]

### 3.     There is No Diversity Jurisdiction

This action also does not satisfy the $75,000 amount-in-controversy requirement of the diversity jurisdiction statute (32 U.S.C. § 1332(a)). *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 861 (9th Cir. 2001) (amount in controversy component "serves both to preserve the jurisdiction exercised by the state courts and to limit the size of the diversity caseload in federal courts"). "In actions seeking

---

[3] Indeed, it is not clear that TSMC has identified a cognizable cause of action at all.  The Declaratory Judgment Act does not create a cause of action. *E.g.*, *Tillman v. Tillman*, No. 09-cv-02017, 2009 WL 10655839, at *3 (C.D. Cal. Dec. 1, 2009) ("The Declaratory Judgment Act does not . . . provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable." (citation omitted)); *Saad v. U.S. Dep't of Homeland Sec.*, No. 09-cv-8428, 2011 WL 2555290, at *5 (C.D. Cal. June 27, 2011); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." (citation omitted)). Instead, the complaint must contain the elements of an established cause of action. *See Martinez v. USAA Fed. Sav. Bank*, 683 F. App'x 584, 585 (9th Cir. 2017) (noting that the Declaratory Judgment Act "only creates a remedy" and listing the state law causes of action the plaintiff failed properly to allege); *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680, 683–84 (9th Cir. 2014) (upholding dismissal of request for declaratory judgment where complaint did not properly allege asserted tort and statutory causes of action). TSMC does not identify any such cause of action.

declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Here, the "object" of TSMC's litigation is a declaratory judgment that would impose restrictions on Tessera's speech in the ITC Proceeding. There is no "amount" that is directly at issue in connection with such a declaration. It is not enough that TSMC asserts that its requested relief might increase Broadcom's likelihood of overturning the ALJ or ITC, or of obtaining a stay of any exclusion order issued by the ITC. *See Anderson Plant LLC v. Batzer Constr., Inc.*, No. 15-cv-01966, 2015 WL 4572294, at *6–7 (N.D. Cal. July 29, 2015) (in assessing amount in controversy, refusing to consider impact of requested relief on availability of remedy in separate action). Rather, the amount in controversy depends only upon the effects "which the judgment would *directly* produce." *In re Ford Motor Co./Citibank S.D., N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (emphasis added).

This is not a case where the declaration TSMC seeks would directly produce any monetary effects. This is not, for example, an insurance case where the interpretation of a contract will directly result in an insurance company paying or not paying on a policy. TSMC does not claim that Tessera, Broadcom, or Cypress owe it any money. Rather, what this case presents is a situation where the ITC may interpret the contract in a certain way before this Court rules on TSMC's motion; Tessera has made certain arguments in the ITC; TSMC seeks to prevent Tessera from making those arguments; if Tessera is prevented from making those arguments, the ITC may or may not follow through with the remedy that it may have already deemed appropriate and imposed; certain bonds may or may not be posted; the President may or may not review the ITC's decision; the ITC and Federal Circuit may or may not stay any exclusion order pending appeal; if an exclusion order ultimately goes into effect, it will be against Broadcom, not TSMC; and as a result of certain Broadcom shipments being banned, TSMC may or may not lose certain business (which loss has not been specified with any particularity). This remote chain of events is not the type of loss that counts as a jurisdictional "amount in controversy" any more than the loss in market capitalization that Tessera and its investors would suffer due to a drop in its stock price if the ITC interprets the contract as TSMC and Broadcom wish.

"It is well settled that the amount in controversy requirement cannot be met by taking into account any collateral effect which may follow adjudication, whether by way of estoppel of the parties

or otherwise." *See Rapoport v. Rapoport*, 416 F.2d 41, 43 (9th Cir. 1969). A court "does not consider [potential consequential] effects in determining the amount in controversy because they are collateral consequences." *Anderson Plant*, 2015 WL 4572294, at *6–7 (quotations omitted) (citing cases); *see also Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856–57 (11th Cir. 2013) (refusing to consider collateral impacts that would not "necessarily" follow from decision in the case (emphasis omitted)); *WBI, Inc. v. Zurich Am. Ins. Co.*, No. 16-cv-4852, 2016 WL 4528956, at *3 (C.D. Cal. Aug. 30, 2016) ("[W]hatever the collateral effects a decree or judgment might have by virtue of *stare decisis*, collateral estoppel, or any other impact on the rights or interests of the parties to the action or third parties, these effects cannot be taken into account in calculating the amount in controversy." (quotation and citations omitted)).  TSMC accordingly cannot count its speculative loss of business as an amount "in controversy" in this dispute.

In short, because TSMC's injuries alleged in support of its requested relief "reflect the collateral effect of the judgment [it] seeks in this action," TSMC fails to establish the amount in controversy necessary to support diversity jurisdiction. *Ross v. Stranger*, No. 11-cv-00094, 2011 WL 1431517, at *2 (N.D. Cal. Apr. 14, 2011).

## II.   TSMC's Complaint Should Be Dismissed Because It Improperly Attacks Protected Activity

Even if the Court were to find it had subject-matter jurisdiction, it should dismiss the Complaint. This action improperly seeks to interfere with Tessera's right to participate in administrative proceedings in direct violation of the *Noerr-Pennington* doctrine, California's litigation privilege, and California's anti-SLAPP statute.

### A.   The *Noerr-Pennington* Doctrine Bars TSMC's Challenge To Tessera's Arguments Made In Exercise Of Its First Amendment Right To Petition The ITC

The right to petition the government for redress of grievances has been described by the Supreme Court as "among the most precious of the liberties safeguarded by the Bill of Rights . . . intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press." *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967). TSMC's request that the Court enjoin Tessera from exercising its right to petition the United States International Trade Commission, a federal agency, is contrary to longstanding law.

1   In particular, "[t]he *Noerr-Pennington* doctrine protects 'the right of the people to petition the

2   Government for a redress of grievances' by providing immunity from liability for petitioning conduct."

3   *OG Int'l, Ltd. v. Ubisoft Ent'mt*, No. 11-cv-04980-CRB, 2012 WL 4809174, at *3 (N.D. Cal. Oct. 9,

4   2012) (quoting *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). "*Noerr* immunity bars any

5   claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected

6   petitioning activity." *Westlands Water Dist. Distrib. Dis. v. Nat. Res. Def. Council, Inc.*, 276 F. Supp. 2d

7   1046, 1053–54 (E.D. Cal. 2003) (holding that *Noerr-Pennington* immunity applies to requests for

8   declaratory judgment because such suits "may . . . have precisely the sort of chilling effect on protected

9   petitioning activity that the *Noerr-Pennington* doctrine is designed to prevent"). "The doctrine

10  immunizes petitions directed at any branch of government, including the executive, legislative, judicial

11  and administrative agencies." *Id.* at 1053; *see also Kaiser Found. Health Plan, Inc. v. Abbot Labs., Inc.*,

12  552 F.3d 1033, 1044 (9th Cir. 2009) ("[T]he Supreme Court extended *Noerr-Pennington* immunity to

13  petitions to administrative agencies and courts."). It is well-settled that proceedings before the ITC

14  qualify as protected petitioning activity for purposes of *Noerr-Pennington*. *See, e.g., Bio-Tech. Gen.*

15  *Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 381–82 (S.D.N.Y. 1995) (dismissing claims under *Noerr-*

16  *Pennington* that were based on participation in an ITC proceeding).

17      In contravention of *Noerr-Pennington*, TSMC's Complaint openly attacks petitioning conduct

18  undertaken by Tessera in litigation at the ITC. For example, TSMC complains that in the ITC

19  proceeding "Tessera ***accuses*** Broadcom of infringing the '946 patent by importing and selling products

20  derived from wafers made by TSMC for Broadcom," Compl., ¶ 36 (emphasis added), that "Tessera

21  ***argued*** Broadcom's patent exhaustion defense should be rejected because the [CNS] extends only to

22  TSMC's 'manufacture' of wafers," *id.* ¶ 37 (emphasis added), that "Tessera has ***asserted*** a position

23  regarding the scope and effect of the [CNS] that is contrary to legal precedent," *id.* ¶ 59 (emphasis

24  added), that Tessera should not be "***seeking*** an import exclusion order," *id.*, and that "Tessera ***led the***

25  ***ALJ*** in the ITC Proceeding to conclude that the [sic] patent exhaustion is not a defense available to

26  Broadcom," *id.* ¶ 60 (emphasis added). Then, in summing up its Complaint, TSMC states, "[t]he

27  purpose of this action is to . . . prevent further harm from Tessera ***asserting*** rights that it does not have,"

28  and seeks among other things "an injunction to prevent Tessera from ***opposing*** a stay of any exclusion

order," *id.* ¶ 54 (emphasis added), and an order that "Tessera ***cannot continue to participate*** in the ITC Proceeding," *id.* ¶ 63 (emphasis added).

"It is only when efforts to influence government action are a 'sham' that they fall outside the protection of the *Noerr-Pennington* doctrine." *Blank v. Kirwan*, 39 Cal. 3d 311, 321 (Cal. 1985). *See also*, *e.g.*, *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); *OG Int'l*, 2012 WL 4809174, at *3. A two-part test applies to the "sham exception":  "[F]irst, it 'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'; second, the litigant's subjective motivation must 'conceal an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process—as opposed to the outcome of that process—as an anti-competitive weapon.'" *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 526 (2002) (emphasis omitted) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61 (1993)). This exception does not apply here, as Tessera has already succeeded at the ITC on the very arguments TSMC now seeks to silence. That alone precludes a finding that the ITC proceeding against Broadcom was "objectively baseless." *E.g.*, *Bio-Tech. Gen. Corp.*, 886 F. Supp. at 382 (holding that ITC proceeding was not baseless where ALJ agreed with defendant's arguments); *Prof'l Real Estate Inv'rs*, 508 U.S. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). There is also no evidence whatsoever of the required subjective motivation.

Therefore, TSMC's broadside attack on Tessera's constitutionally-protected petitioning conduct clearly violates the *Noerr-Pennington* doctrine.  The Complaint should be dismissed.

**B.    California's Litigation Privilege Also Bars TSMC's Requested Order Restraining Tessera's Petitioning Conduct**

The petitioning conduct TSMC seeks to silence is separately protected by California's litigation privilege.[4] That privilege, codified at Cal. Civ. Code § 47(b), broadly safeguards statements made in the course of "any (1) legislative proceeding, (2) judicial proceeding, [or] (3) in any other official

---

[4] "[T]he federal courts will recognize state privileges . . . in cases in which '[s]tate law supplies the rule of decision.'" *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (quoting Fed. R. Evid. 501). Here, TSMC attempts to interpret and restrict Tessera's speech about a contract containing a California choice of law clause. Compl., ¶ 29. In these circumstances, California's litigation privilege applies to immunize protected activity.

proceeding authorized by law."  Cal. Civ. Code § 47(b); *see also Silberg v. Anderson*, 50 Cal. 3d 205, 212 (Cal. 1990). "To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." *Id.* at 215. "[A]pplication of the privilege furthers the policy of allowing access to the courts without fear of harassing derivative actions," *Feldman v. 1100 Park Lane*, 160 Cal. App. 4th 1467, 1497–98 (Cal. Ct. App. 2008), such as TSMC's action here.  "[P]lacing in the hands of a litigation adversary a weapon with the tactical potential of . . . injunctive relief would promote all the evils we have described [] as accompanying retaliatory suits based on litigation-related communications." *Rubin v. Green*, 4 Cal. 4th 1187, 1203 (Cal. Ct. App. 1993) (barring claim under California's litigation privilege).

As already explained above in connection with the *Noerr-Pennington* doctrine, TSMC seeks to enjoin Tessera from making statements in the course of litigation. The law simply does not entitle TSMC, or any other litigant, to prevent an adversary from engaging in activity "absolutely privileged" under California law. For this additional, independent reason, TSMC's Complaint should be dismissed. *See, e.g.*, *Meza v. Meza*, No. 12-cv-01777, 2013 WL 2338126, at *12–13 (C.D. Cal. May 25, 2013) (applying litigation privilege in dismissing claim that defendant misled court in separate proceeding); *see also Kaneka Corp. v. Xiamen Kingdomway Gr. Co.*, No. 11-cv-02389, 2014 WL 12577150, at *4–5 (C.D. Cal. Feb. 24, 2014) (dismissing claims on motion for summary judgment where privileged statements were made in connection with pending ITC proceeding).

### C.  Motion To Strike:  TSMC's Complaint Should Be Stricken Under California's Anti-SLAPP Statute

TSMC's misguided request that the Court enjoin Tessera from taking positions in litigation before the ITC is also proscribed, and should be struck, under another well-established California law. In particular, in response to the "disturbing increase" in meritless lawsuits brought to chill the exercise of constitutional rights, the California Legislature overwhelmingly enacted California's "anti-SLAPP" statute and provided that it should be "construed broadly." Cal. Civ. Proc. Code § 425.16(a). The statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special

motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Id.* § 425.16(b)(1).[5] Acts protected by the statute include: "(1) any written or oral statements or writing made before a . . . judicial proceeding [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." *Id.* § 425.16(e). The statute applies to claims based upon petitioning activity before administrative or quasi-judicial bodies such as the ITC. *See Briggs v. Eden Counsel for Hope & Opportunity*, 19 Cal. 4th 1106, 1121 (Cal. 1999) (the anti-SLAPP statute applies to "protect all direct petitioning of governmental bodies (including as relevant here, courts and administrative agencies) and petition-related statements and writings").

To invoke the statute's protection, a defendant need only show that a cause of action arises from "any act of that person in furtherance of the person's right of petition . . . under the United States or California Constitution in connection with a public issue." *Matson v. Dvorak*, 40 Cal. App. 4th 539, 547 (Cal. Ct. App. 1995) (quoting Cal. Code Civ. Proc. § 425.16(b)). Here there is no question that TSMC is seeking to restrain Tessera's positions in furtherance of litigation before the ITC. As already explained in discussing the *Noerr-Pennington* doctrine above, TSMC's complaint is based on petitioning activity including what Tessera "accuses," "argues," "asserts," "seeks," "opposes" and "led the ALJ . . . to conclude" in the ITC Proceeding, and ultimately seeks an order that "Tessera cannot continue to participate" in that federal litigation. *See* Section II.A above.

Once a defendant establishes that the anti-SLAPP statute applies, the court must grant the motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). In order to carry its burden of establishing a probability of prevailing on its claims, the plaintiff must show that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

---

[5] The anti-SLAPP statute "applies in federal court when … the action is based on California state law and the court's power over the suit derives from diversity jurisdiction." *AT&T Mobility LLC v. Yeager*, No. 13-cv-00007, 2017 WL 4365954, at *2 (E.D. Cal. Sept. 29, 2017). As explained above, the contract at issue includes "a choice-of-law . . . clause incorporating California law," Compl., ¶ 29, and TSMC's action seeks to interpret and restrain speech about that contract. Thus, if the Court finds diversity jurisdiction as TSMC requests, the anti-SLAPP statute would apply here.

judgment." *Winters v. Jordan*, No. 09-cv-00522, 2010 WL 2838634, at *3 (E.D. Cal. July 20, 2010)

(quoting *Kearny v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009)). In contrast to a 12(b)(6)

motion, the plaintiff must make an evidentiary showing at the pleading stage to defeat an anti-SLAPP

motion. *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (Cal. Ct. App. 2001) ("Unlike

demurrers or motions to strike, which are designed to eliminate sham or facially meritless allegations, at

the *pleading* stage a SLAPP motion, like a summary judgment motion, *pierces* the pleadings and

requires an evidentiary showing.") (emphasis in original). Courts have analogized the burden required to

rebut an anti-SLAPP motion to that required to rebut a motion for summary judgment. *See Roberts v.*

*McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) ("The plaintiff's burden resembles the burden he

would have in fending off a motion for summary judgment or directed verdict."); *Varian Med. Sys., Inc.*

*v. Delfino*, 35 Cal. 4th 180, 192 (Cal. 2005) ("Section 425.16 therefore establishes a procedure where the

trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage

of the litigation.").

TSMC cannot satisfy its burden of establishing a probability of success on the merits for each of

the several reasons already set forth in detail above: TSMC lacks standing, *Noerr-Pennington* immunity

and the California litigation privilege apply, and dismissal is warranted under the Declaratory Judgment

Act.  *See supra*; s*ee also, e.g., AT&T Mobility LLC*, 2017 WL 4365954, at *6–7 (striking lawsuit under

anti-SLAPP statute because plaintiff could not establish standing); *Premier Med. Mgmt. Sys., Inc. v. Cal.*

*Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 479 (Cal. Ct. App. 2006) (granting anti-SLAPP motion where

*Noerr-Pennington* doctrine barred plaintiff's claims).

In fact, the Alameda County Superior Court granted an anti-SLAPP motion to strike on *Noerr-*

*Pennington* grounds under facts nearly identical to the relevant facts here. In *Tessera, Inc. v. United Test*

*and Assembly Center*, Case No. RG08410327, United Test and Assembly Center ("UTAC"), another

subcontractor like TSMC, also brought claims against Tessera based upon Tessera's petitioning activity

in an ITC investigation. UTAC alleged that Tessera breached a license agreement by asserting

infringement claims in the ITC investigation against one of UTAC's customers. Ex. A (UTAC

Complaint) ¶¶ 102–103, 111. The *UTAC* court first found that the UTAC causes of action based on

breach of the license agreement fell within the anti-SLAPP statute:

1

2

3

4

> Here Tessera asserts that the 4th and 5th causes of action arise from its litigation activity in an action brought by Tessera before the ITC against several parties, including a UTAC customer, and the 6th cause of action arises from the positions taken by Tessera in the instant litigation. The Court agrees. All three of the challenged causes of action fall within the clear language of the statute, to wit: "…any written or oral statement or writing made in connection with an issue under construction or review by a … judicial body."  (CCP section 425.16(e)(2).) (Id, at 89-90.).

5

6

7

8

Ex. B (5/4/09 Tessera-UTAC Order) at 2 (Hon. Robert B. Freedman). Next, the court found that UTAC

was unable to show a probability of prevailing on its claims because the *Noerr-Pennington* doctrine and

the California litigation privilege barred UTAC's claims. *Id.* The same result should follow for the same

reasons here.

9

10

11

12

Finally, a movant who prevails on an anti-SLAPP motion "shall be entitled to recover his or her

attorneys' fees and costs." Cal. Civ. Proc. Code § 425.16(c); *see Ketchum v. Moses*, 24 Cal. 4th 1122,

1131 (Cal. 2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to

mandatory attorney fees."). The Ninth Circuit has held that the anti-SLAPP statute attorneys' fees

13

14

15

16

provision, § 425.16(c), applies with equal force in federal court. *U.S. ex rel. Newsham v. Lockheed*

*Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that § 425.16(b)-(c) may be

applied in federal court). Tessera respectfully requests an award of attorneys' fees and costs and will

provide the details of those fees and costs to the Court at an appropriate time.

17

18

## III. Dismissal Of TSMC's Declaratory Judgment Action Is Warranted Under *Wilton/Brillhart* Abstention

19

20

21

22

23

24

25

26

27

28

TSMC asks this Court to "declare": (i) the viability of a third party's (*i.e.*, Broadcom's)

affirmative defense in the ITC Proceeding, (ii) the "incorrect[ness]" of an ALJ's decision rendered after

a full trial on the merits, and (iii) the scope of what Tessera is permitted to argue in the ITC Proceeding.

TSMC seeks this relief not only while the ITC is deep into its review process (and after a full trial on the

merits), but also when TSMC admits that another federal district court action filed fifteen months ago is

set to decide the same issue TSMC asks this Court to decide. *See* Compl., ¶ 36. The Supreme Court has

held that the Declaratory Judgment Act is expressly permissive in nature and that requested relief should

only be granted when it would further principles of "practicality and wise judicial administration." What

TSMC is asking this Court to do is the opposite of practicality and wise judicial administration, and

therefore this Court can and should exercise its broad discretion to abstain and dismiss this action.

As the Supreme Court has held:

> [T]here is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver, it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants . . . . In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 88; *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 493–95 (1942). The district court's discretion to abstain is broad and has been exercised in a variety of contexts, including in deference to state court proceedings, federal district court proceedings, bankruptcy proceedings, administrative agency proceedings, and even in proceedings that had not yet even been filed. *See, e.g.*, *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986–87 (7th Cir. 2010) (parallel state case); *Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999) (parallel federal district court case); *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268, 275–76 (D. Del. 1997) (parallel bankruptcy case); *Nissan N. Am., Inc. v. Andrew Chevrolet, Inc.*, 589 F. Supp. 2d 1036, 1041–42 (E.D. Wis. 2008) (parallel administrative proceeding); *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 754 (9th Cir. 1996) *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (no parallel proceeding).[6]

**Most importantly, declaratory relief abstention has been applied and upheld in circumstances virtually identical to this case**. In *Cellco Partnership v. Broadcom Corp.*, 227 F. App'x 889 (Fed. Cir. 2007), the Federal Circuit reviewed an order by a district court that dismissed a declaratory relief action in deference to an ITC proceeding. Just as is the case here, the plaintiff in *Cellco* filed a declaratory relief action that raised issues that were already being decided in an ITC proceeding. *Id.* at 889–90. Also as here, the plaintiff in *Cellco* was not a party to the ITC proceeding, but like TSMC, apparently had an

---

[6] TSMC may argue that its request for an injunction precludes declaratory judgment abstention. However, TSMC's sole request for relief is under the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), and the Complaint concedes that TSMC "seeks injunctive relief protecting the rights so declared." Compl., ¶ 54. Consequently, the injunctive relief claim does not "exist independent of any request for purely declaratory relief," and does not preclude abstention. *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) ("The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for declaratory relief simply dropped from the case.").

1   interest in seeing one of the ITC participants prevail in its position so sought a "declaration" regarding

2   the position in district court. *Id.* Also, like this case, the parties to the ITC proceeding in *Cellco* were

3   parties to a first-filed district court action that had been stayed in favor of the ITC proceeding. Under

4   these facts and procedural posture, identical to those at issue here in all material respects, the Federal

5   Circuit held that declaratory relief abstention was appropriate. *Id.*; *see also Aluminum Housewares Co.*

6   *v. Chip Clip Corp.*, 609 F. Supp. 358, 363 (E.D. Mo. 1984) (abstaining from requested declaratory relief

7   in favor of ITC proceeding).

8       As this Court has held:

9           A district court should avoid needless determination of state law issues; it
            should discourage litigants from filing declaratory actions as a means of
10          forum shopping; and it should avoid duplicative litigation.  These three
            primary factors, though not exclusive, are the "philosophic touchstone" of
11          the *Brillhart/Wilton* analysis.

12  *Mainini v. Johnson*, No. 14-cv-03205-BLF, 2015 WL 1225633, at *3 (N.D. Cal. Mar. 17, 2015)

13  (granting motion to dismiss and quoting *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 803 (9th Cir. 2002),

14  and *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011)). Here, TSMC asks this Court

15  to declare the purportedly "correct" interpretation of a contract under California contract interpretation

16  law—which constitutes a "needless determination of state law issues." In addition, TSMC waited until

17  the ALJ ruled against Broadcom on its affirmative defense to rush into this Court to attempt to re-litigate

18  Broadcom's affirmative defense—which constitutes forum shopping. Finally, TSMC is not only seeking

19  to re-litigate what is already being litigated in the ITC Proceeding,[7] it is also seeking to litigate what it

20  concedes will be litigated in the first-filed Delaware Action—which constitutes triplicate litigation.

21

22  _____

23  [7] For instance, TSMC asks this Court to decide that the "public interest" weighs against an import ban.
    Dkt. 8, at 24–25. Yet, the ITC—which is statutorily charged with addressing this very issue—solicited
24  the public, including TSMC, to provide positions on this issue no fewer than three times. *See* Notice of
    Request for Statements on the Public Interest, 82 Fed. Reg. 32,584 (July 14, 2017); Schedule for Filing
25  Written Submissions on the Issues Under Review and on Remedy, the Public Interest, and Bonding, 82
    Fed. Reg. 46,519 (Oct. 5, 2017); Solicitation of Comments Relating to the Public Interest, 81 Fed. Reg.
26  33,707 (May 27, 2016); *see also* 19 U.S.C. § 1337(d)(1) (before making an exclusion order,
    Commissioner must consider "the effect of such exclusion upon the public health and welfare,
27  competitive conditions in the United States economy, the production of like or directly competitive
    articles in the United States, and United States consumers."). TSMC never did, but now has taken many
28  of the public submissions to the ITC and filed them in this Court as purported support for its preliminary
    injunction request. *See* Dkts. 9-6 through 9-15.

Thus, all three "primary factors" which serve as the "philosophic touchstone" of declaratory judgment abstention are present here. *Mainini,* 2015 WL 1225633, at *3. The Complaint therefore should be dismissed.

**CONCLUSION**

TSMC's Complaint lacks subject-matter jurisdiction. It requests a prior restraint on protected speech in violation of settled law. And it provides the paradigmatic case for declaratory relief abstention. For each of these reasons, the Complaint should be dismissed.


Dated:  November 13, 2017

COVINGTON & BURLING LLP

*/s/ Michael K. Plimack*
Michael K. Plimack (SBN 133869)
mplimack@cov.com
Dale A. Rice (SBN 146249)
drice@cov.com
Nitin Subhedar (SBN 171802)
nsubhedar@cov.com
One Front Street
San Francisco, CA 94111
Telephone:     (415) 591-6000
Facsimile:     (415) 591-6091

TESS HAMILTON (Bar No. 279738)
tahamilton@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
Telephone:     (650) 632-4700
Facsimile:     (650) 632-4800

Bradley K. Ervin (Admitted *Pro Hac Vice*)
Daniel E. Valencia (Admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
Telephone:     (202) 662-6000
Facsimile:     (202) 662-6291

*Attorneys for Defendants Tessera, Inc., Tessera Technologies, Inc. and Invensas Corporation*