1  Michael K. Plimack (SBN 133869)
   mplimack@cov.com
2  Dale A. Rice (SBN 146249)
   drice@cov.com
3  Nitin Subhedar (SBN 171802)
   nsubhedar@cov.com
4  COVINGTON & BURLING LLP
   One Front Street
5  San Francisco, CA 94111
   Telephone:    (415) 591-6000
6  Facsimile:    (415) 591-6091

7  TESS HAMILTON (Bar No. 279738)
   tahamilton@cov.com
8  COVINGTON & BURLING LLP
   333 Twin Dolphin Drive, Suite 700
9  Redwood Shores, California 94065
   Telephone:    (650) 632-4700
10 Facsimile:    (650) 632-4800

11 Bradley K. Ervin (Admitted Pro Hac Vice)
   Daniel E. Valencia (Admitted Pro Hac Vice)
12 COVINGTON & BURLING LLP
   One CityCenter, 850 Tenth Street, N.W.
13 Washington, DC 20001
   Telephone:    (202) 662-6000
14 Facsimile:    (202) 662-6291

   *Attorneys for Defendants*
15 *Tessera, Inc., Tessera Technologies,*
   *Inc., and Invensas Corporation*

16                UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                      SAN JOSE DIVISION

19 TAIWAN SEMICONDUCTOR                    Civil Action No. 5:17-CV-05888-BLF
   MANUFACTURING COMPANY LIMITED,
20                                         **TESSERA DEFENDANTS' OPPOSITION
                                           TO PLAINTIFF TAIWAN
21              Plaintiff,                 SEMICONDUCTOR MANUFACTURING
                                           COMPANY LIMITED'S MOTION FOR
22      v.                                 PRELIMINARY INJUNCTION**

23 TESSERA, INC., TESSERA                  Date:      December 21, 2017
   TECHNOLOGIES, INC., and INVENSAS        Time:      9:00 a.m.
24 CORPORATION,                            Location:  San Jose Courtroom 3
                                           Judge:     Hon. Beth Labson Freeman
25              Defendants.

26

27      **REDACTED PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... **Error! Bookmark not defined.**

TABLE OF ABBREVIATIONS ................................................................. v

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................... 4

        A.    The ITC Proceeding Against Broadcom And The Finding Of No Exhaustion ...... 4

        B.    TSMC's Behind-The-Scenes Participation In The ITC Proceeding...................... 5

        C.    Negotiation of the Limited CNS In The MTUA..................................................... 7

        D.    Tessera's Purchase Of The '946 Patent ................................................................. 9

III.    TSMC'S MOTION SHOULD BE DENIED .................................................. 10

        A.    TSMC Does Not Have a Likelihood Of Success On The Merits ......................... 10

              1.    TSMC Is Seeking Unprecedented Relief.................................................... 10

              2.    The ITC's Ruling Precludes Any Finding of Likelihood of Success ....... 12

              3.    The CNS Does Not Exhaust Tessera's Patent Rights............................... 13

                    a)    Exhaustion of Patent Rights Requires an Authorized Sale........... 13

                    b)    The MTUA is Ambiguous and Therefore Must Be Interpreted to Give Effect to the Mutual Intent of The Parties at the Time of Contracting ................................................................................. 13

                    c)    The MTUA does not Confer "Sell" Rights on TSMC.................. 15

              4.    The CNS Does Not Bind Tessera ............................................................. 18

        B.    TSMC's Delay In Seeking Relief Shows It Does Not Face Irreparable Harm..... 19

        C.    The Balance Of Hardships Weighs In Tessera's Favor ........................................ 21

        D.    TSMC Has Not Shown That An Injunction Is In The Public Interest .................. 23

        E.    If An Injunction Is Granted, TSMC Should Be Required To Post A Bond Of The Same Amount The ITC Respondents Would Have Posted During The Presidential Review Period But For The Injunction ........................ 24

IV.     CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                      Page(s)

*Abbot Labs. v. Andrx Pharms., Inc.,*
    452 F.3d 1331 (Fed. Cir. 2006)........................................................................24

*Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.,*
    2011 WL 5402667 (D. Del. Nov. 8, 2011) ......................................................21

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.,*
    604 F.3d 1354 (Fed. Cir. 2010)........................................................................14

*Apple Comput., Inc. v. Microsoft Corp.,*
    35 F.3d 1435 (9th Cir. 1994) ...........................................................................15

*Bangkok Broad. & T.V. Co. v. IPTV Corp.,*
    2009 WL 10670331 (C.D. Cal. July 27, 2009)................................................20

*Bridgestone Brands, LLC v. Dastgah,*
    2016 WL 1070670 (N.D. Cal. Mar. 18, 2016) .................................................10

*Broadcom Corp. v. Qualcomm Inc.,*
    2005 WL 5925584 (C.D. Cal. Oct. 19, 2005)..................................................20

*Castellanos v. Countrywide Bank NA,*
    2015 WL 1906074 (N.D. Cal. Apr. 27, 2015) .................................................22

*Cellco P'ship v. Broadcom Corp.,*
    227 F. App'x 889 (Fed. Cir. 2007) .............................................................13, 24

*Certain Commc'ns or Computing Devices and Components Thereof,*
    Inv. No. 337-TA-925, Order No. 6 (USITC Sept. 9, 2014)...............................5

*Certain Semiconductor Chips With Minimized Package Size and Products Containing
    Same,*
    Inv. No. 337-TA-605, Order No. 52 (Feb. 26, 2008) ..................................21, 22

*Cty. of Los Angeles v. Raytheon Co.,*
    159 Cal. App. 4th 27 (Cal. Ct. App. 2008) ................................................15, 16

*Epic Commc'ns, Inc. v. Richwave Tech., Inc.,*
    237 Cal. App. 4th 1342 (Cal. Ct. App. 2015) .................................................14

*First Nat'l Mortg. v. Fed. Realty Inv. Trust,*
    631 F.3d 1058 (9th Cir. 2011) .........................................................................14

*Flores v. Transamerica HomeFirst, Inc.,*
    93 Cal. App. 4th 846 (Cal. Ct. App. 1995) ....................................................13

*Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*,
    2010 WL 5559750 (D.N.M. Nov. 30, 2010) ..........................................................11, 12

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*,
    No. 10-cv-1020, 2010 U.S. Dist. 137160 (D.N.M. Dec. 7, 2010) ......................................11

*Hanginout, Inc. v. Google, Inc.*,
    54 F. Supp. 3d 1109, 1132 (S.D. Cal. 2014) ..............................................................20

*iFreedom Direct Corp. v. McCormick*,
    2016 WL 9049647 (C.D. Cal. June 15, 2016) ..............................................................20

*Impression Products, Inc. v. Lexmark International, Inc.*,
    137 S. Ct. 1523 (2017)...............................................................................5, 13

*Intel Corp. v. Int'l Trade Comm'n*,
    946 F.2d 821 (Fed. Cir. 1991)...........................................................................17

*Lite On It Corp. v. Toshiba Corp.*,
    2009 WL 10673953 (C.D. Cal. Jan. 12, 2009) ..............................................................22

*LSI Comput. Sys., Inc. v. Int'l Trade Comm'n*,
    832 F.2d 588 (Fed. Cir. 1987).............................................................................6

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*,
    831 F. Supp. 1354 (N.D. Ill. 1993) (Easterbrook, J.) *aff'd on other grounds*, 71 F.3d
    1573 (Fed. Cir. 1995).....................................................................................16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ...........................................................................10

*Medicines Co. v. Hospira, Inc.*,
    827 F.3d 1363 (Fed. Cir. 2016)....................................................................16, 17

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ...........................................................................11

*Microsoft Corp. v. Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015) .........................................................................12

*Realtek Semiconductor Corp. v. LSI Corp.*,
    946 F. Supp. 2d 998 (N.D. Cal. 2013) ..................................................................12

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)........................................................................23

*Save Our Sonoran, Inc. v. Flowers*,
    408 F.3d 1113 (9th Cir. 2005) .........................................................................24

*Stormans, Inc. v. Selecky*,
    589 F.3d 1109 (9th Cir. 2009) ..................................................................................21, 23

*Television Educ., Inc. v. Contractors Intelligence School, Inc.*,
    2017 WL 2958729 (E.D. Cal. July 11, 2017) ............................................................20, 21

*Tex. Instruments Inc. v. Tessera, Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000).................................................................................11, 12

*TPW Mgmt., LLC v. Yelp Inc.*,
    2016 WL 6216879 (N.D. Cal. Oct. 25, 2016)...................................................................19

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009).................................................................................13, 16

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*,
    368 F. Supp. 2d 1121 (W.D. Wash. 2005)........................................................................20

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .............................................................................................................19

**STATUTES**

19 U.S.C. § 1337 .......................................................................................................................6

Cal. Civ. Code § 1636................................................................................................................14

Cal. Civ. Code § 1648................................................................................................................15

**OTHER AUTHORITIES**

19 C.F.R. § 210.10 (2015) Section 337 ........................................................................11, 12, 23

19 C.F.R. § 210.19 .....................................................................................................................5

Federal Rule of Civil Procedure 65(c) .......................................................................................24

**TABLE OF ABBREVIATIONS**

| Abbreviation | Full Name |
|---|---|
| '946 Patent | U.S. Patent No. 6,849,946 (Rice Ex. 2) |
| ALJ | Administrative Law Judge |
| CNS | Covenant not to sue contained in the Cypress-TSMC Master Technology Usage Agreements (Londen Ex. 16) (ITC Ex. JX-0501C) |
| Customer Respondents | The Broadcom customers that are Respondents in the ITC Proceeding, including Arista Networks, Inc., ARRIS International plc, ARRIS Group, Inc., ARRIS Technology, Inc., ARRIS Enterprises LLC, ARRIS Solutions, Inc., Pace Ltd. (formerly Pace plc), Pace Americas, LLC, Pace, USA LLC, ASUSTeK Computer Inc., ASUS Computer International, Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, Comcast Business Communications, LLC, HTC Corporation, HTC America, Inc., NETGEAR, Inc., Technicolor S.A., Technicolor USA, Inc., and Technicolor Connected Home USA LLC |
| Cypress | Cypress Semiconductor Corporation |
| Exhaustion MSD | Non-ASUS Respondents' Motion for Partial Summary Determination of No Violation of U.S. Patent No. 6,849,946 as to Products Manufactured for Non-ASUS Respondents by TSMC (Nov. 9, 2016) |
| ITC Proceeding | Investigation instituted by the United States International Trade Commission on June 20, 2016, captioned *Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same*, Investigation No. 337-TA-1010 |
| ITC Respondents | All Respondents in the ITC Proceeding, including Broadcom Limited and Broadcom Corporation (collectively "Broadcom") and the Customer Respondents |
| ID | Final Initial Determination (June 30, 2017) (Rice Ex. 1 (portions of public version of ID regarding '946 Patent); Rice Ex. 16 (confidential portion of ID regarding '946 Patent exhaustion issue)) |
| Martinez Decl. | Declaration of Christopher A. Martinez in Support of Tessera Defendants' Opposition to Plaintiff Taiwan Semiconductor Manufacturing Company Limited's Motion for Preliminary Injunction |
| Micron | Micron Technology, Inc. |
| MTUA | Master Technology Usage Agreement between Cypress and TSMC effective April 23, 2012 (Londen Ex. 16) (ITC Ex. JX-0501C) |
| PPA | Patent Purchase Agreement for purchase of '946 Patent (and other patents) from Cypress Semiconductor Corporation, effective March 18, 2014 (Rice Ex. 22) |
| PTAB | Patent Trial and Appeal Board |
| Rice Decl. | Declaration of Dale A. Rice in Support of Tessera Defendants' Opposition to Plaintiff Taiwan Semiconductor Manufacturing Company Limited's Motion for Preliminary Injunction |
| USPTO | United States Patent and Trademark Office |

# I.    INTRODUCTION

TSMC requests a preliminary injunction against Tessera, seeking to relitigate the same contract interpretation arguments that have already been rejected by an Administrative Law Judge ("ALJ") and (if this motion is heard) the Commissioners of the U.S. International Trade Commission ("ITC"). But preliminary injunctions are not for parties who lie in wait to see how a judge will rule on an issue, and then only after an adverse decision seek to relitigate the identical issue in another forum. This is precisely what TSMC is attempting to do here. Worse, to achieve the tactical result it seeks, TSMC asks this Court to enjoin quintessentially protected speech in other pending federal litigation. This Court should not countenance these tactics.

TSMC's Complaint is solely under the Declaratory Judgment Act, and it is premised on numerous jurisdictional and other defects that are the subject of Tessera's concurrently-filed motion to dismiss. TSMC asks this Court to "declare" that an affirmative defense asserted by Broadcom (not a party to this case) in a proceeding before the ITC is meritorious, and that the ALJ's conclusion to the contrary after a full trial on the merits was "incorrect." Although TSMC declined numerous opportunities to make itself heard in that same ITC Proceeding, TSMC now suddenly contends that it would be "irreparably harmed" if the ITC were to pursue its natural and customary course in reviewing the ALJ's decision and then, if circumstances warrant, imposing an import ban. Why? Because TSMC contends that the ALJ erred in her interpretation of a contract and application of that interpretation to Broadcom's affirmative defense of patent exhaustion, and that the ITC Commissioners may also err when they review the ALJ's ruling. This theory of entitlement to relief and irreparable harm is deeply flawed and comes nowhere close to satisfying the preliminary injunction standard that it is TSMC's burden to prove.

First, TSMC cannot demonstrate a likelihood of success on the merits. Holding aside the fatal defects of TSMC's complaint, which are addressed in Tessera's motion to dismiss, it is difficult to see how TSMC could have a "likelihood" of succeeding on the same issue that has already been decided in Tessera's favor. TSMC's arguments were already vetted in the ITC Proceeding by Broadcom based on a full evidentiary record and following a five-day trial. And Broadcom lost on the very issue that TSMC seeks to relitigate in this Court – namely Broadcom's '946 patent exhaustion defense and the contract

interpretation issue that is central to it. TSMC makes no argument in its preliminary injunction motion that was not also made to and rejected by the ALJ in the ITC Proceeding. It presents the same evidence that was presented in the ITC and considered by the ALJ and the Commission. And the same law and standard that would be applicable in this case were applied in the ITC Proceeding. TSMC makes no claim that the ALJ or Commissioners are biased against TSMC or Broadcom. TSMC just claims the ALJ (and potentially the Commission as a whole) reached the "incorrect" decision. But that is what appeals are for. Significantly, even as a non-party, *TSMC is entitled to appeal the ITC decision to the Federal Circuit.* TSMC's claim that the ITC's decision was "incorrect" can and should be addressed to the Federal Circuit, not this Court.

But even if this Court were now to delve into the contract interpretation issues TSMC seeks to relitigate, the result would be the same. The MTUA was not intended to provide "patent peace" as TSMC claims without any evidentiary support. On the contrary, and as the ALJ correctly ruled on a full evidentiary record and trial, █████████████████████████ as TSMC now claims, but rather ███████████████████████████████████████████████████████████████ ██████████████████ For this reason, it is not surprising that █████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ which is dispositive of the exhaustion issue. Even now, TSMC has not come forward with any witness involved in the negotiation of the MTUA to testify that the MTUA was a "patent peace" agreement, or to attempt to explain away the clear drafting history during which ███████████████████████████████████████ ████████████ TSMC's exhaustion position would require the Court to adopt the nonsensical result that in ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

Second, TSMC cannot show the irreparable harm required to warrant a preliminary injunction. At its core, the purported "harm" TSMC faces is a loss in the ITC on its proffered contract interpretation and the consequences that could flow from that loss. But TSMC could lose in this Court as well. So what TSMC is *really* contending is that it would be irreparably harmed if the ITC decided the contract

interpretation and exhaustion issue, because TSMC believes the ITC is more likely to rule against Broadcom's defense than this Court is. Issuing a preliminary injunction in such circumstances would not prevent "irreparable harm"; it would reward forum shopping.

And forum shopping is exactly what TSMC is doing here. TSMC knew about the ITC Proceeding from its inception. TSMC knew all about Broadcom's patent exhaustion defense and Tessera's response to it, including whatever effect the resolution of that issue would supposedly have on TSMC's business. TSMC also knew that Broadcom moved for summary determination (the ITC equivalent of a motion for summary judgment) on the issue of interpretation of the contract, and the ALJ expressly ruled that it was ambiguous and that its meaning would be determined after an examination of the evidence and witnesses at trial. Yet at none of these junctures did TSMC seek to intervene in the ITC Proceeding, file this action, or seek preliminary injunctive relief. Instead, TSMC waited to see how Broadcom's exhaustion defense fared at trial, and only after the ALJ ruled against Broadcom (and thus TSMC) did TSMC file this action and seek a preliminary injunction. This is forum shopping, not a party diligently protecting itself from irreparable harm.

TSMC also cannot satisfy the other preliminary injunction factors. For instance, TSMC speaks of supposed harm that will befall the public if an injunction does not issue, but when the ITC expressly asked for entities like TSMC to submit public interest statements and evidence in favor of or against an import ban, TSMC made the strategic decision to stay silent. And as with the rest of the ALJ's decision, if the ITC Commissioners affirm, this will mean that the government agency statutorily charged with the responsibility for weighing the public interest impact of an import ban has decided that issue against Broadcom and TSMC, on a full evidentiary record and after a year and a half investigation. This in turn amply demonstrates that the public interest factors do not favor TSMC here.

In summary, TSMC cites no law in any jurisdiction, anywhere or ever, holding that a court can enjoin a party's continued proceedings before a federal administrative agency simply because a non-party to those proceedings believes the other tribunal may interpret a contract incorrectly. Given TSMC's knowledge of the ITC Proceeding, and the ITC's ruling in Tessera's favor, TSMC cannot possibly satisfy its burden to prove what is necessary to secure a preliminary injunction – a likelihood of success on the merits, irreparable harm, balance of hardships in its favor, and public interest favoring an

1   injunction. TSMC's motion should be denied, and as shown in Tessera's motion to dismiss, the

2   Complaint should be dismissed.

3   **II.      FACTUAL BACKGROUND**

4   **A.      The ITC Proceeding Against Broadcom And The Finding Of No Exhaustion**

5           On May 23, 2016, Tessera filed its Complaint with the ITC alleging infringement of the '946

6   Patent (and two others) by Broadcom and several Broadcom customers.[1] The '946 Patent facilitates the

7   fabrication of modern semiconductor chips. It enables a manufacturer to achieve substantial planarity in

8   each layer deposited above the substrate – an outcome critical to the structural and operational integrity

9   of the finished device – through the particular placement of "dummy conductors" in certain regions.

10  Rice Ex. 1 (ID at 5-13); Ex. 2 ('946 Patent).

11          On June 30, 2017, following a one-week evidentiary hearing, the ALJ issued her findings (in an

12  Initial Determination, or "ID") that the '946 Patent is both valid and broadly infringed by more than

13  2,100 Broadcom products in seven different technology nodes extending across all of Broadcom's

14  significant product lines. Rice Ex. 1 (ID at 24-39, 42-61). ████████████████████████

15  ██████████████████ Rice Decl. ¶ 20; Rice Ex. 14 ████████████████████

16  ████████████████ Before the hearing, the USPTO had also confirmed the '946 Patent's validity,

17  rejecting Broadcom's *Inter Partes* Review ("IPR") petition. Rice Ex. 3. The ALJ also found a domestic

18  industry that should be protected against infringing foreign imports because two Tessera licensees have

19  made substantial investments in the domestic manufacture of articles protected by the patent. Rice Ex. 1

20  (ID at 39-42, 225-32). Accordingly, the ALJ recommended that the full Commission issue a remedy

21  against Broadcom and the other ITC Respondents (who use infringing Broadcom chips in their products)

22  in favor of Tessera and the domestic industry. *Id.* at 256-61.

23          In September 2016, four months into the ITC Proceeding, Tessera learned of the MTUA for the

24  first time when TSMC's U.S. subsidiary, TSMC-NA, produced it. On November 9, 2016, Broadcom and

25  other ITC Respondents filed a summary determination motion arguing that Tessera's right to enforce the

26  _____

27  [1] TSMC's Motion for Preliminary Injunction ("Mot.") at 11. Exhibits to TSMC's Motion for
    Preliminary Injunction are cited by declarant name and number (*e.g.*, Londen Ex. 1, Ko Ex. 1).
28  Additional exhibits submitted with Tessera's opposition are attached to the Declaration of Dale A. Rice
    in Opposition to TSMC's Motion for Preliminary Injunction and are cited as "Rice Ex. X."

1    '946 Patent against products manufactured by TSMC was exhausted by the MTUA between Cypress

2    and TSMC. On December 5, 2016, the ALJ issued a written order denying the motion, finding the

3    MTUA ambiguous and requiring a trial on the merits. Rice Ex. 15 (Order No. 49 at 5).

4            Following discovery and pretrial proceedings, and after conducting a five-day trial and

5    considering extensive post-hearing briefing (including supplemental briefs to address the implications of

6    *Impression Products, Inc. v. Lexmark International, Inc.*, 137 S. Ct. 1523, 1534 (2017)), the ALJ

7    determined that the MTUA does not exhaust Tessera's rights in the '946 Patent. Rice Ex. 16 (ID at 68).

8    On September 29, 2017, the Commission determined to review the ID, including the exhaustion issue.

9    Rice Ex. 6. The Commission's final determination is expected on December 1, 2017.

10           **B.    TSMC's Behind-The-Scenes Participation In The ITC Proceeding**

11           Tessera sought discovery from TSMC in the ITC Proceeding, but TSMC refused to cooperate.

12   Tessera served subpoenas on three TSMC U.S. subsidiaries, including TSMC-NA, but TSMC-NA

13   claimed that it was not able to obtain technical documents and information from its parent, TSMC. Rice

14   Decl. ¶ 12. Tessera also obtained letters rogatory to TSMC, but the U.S. consular officer in Taiwan

15   informed Tessera that TSMC could not be served "because the company [*i.e.* TSMC] has declined to

16   provide evidence." *Id.* ¶ 13; Rice Ex. 7. In short, when Tessera tried to obtain discovery about TSMC-

17   manufactured Broadcom products, TSMC shielded itself – and Broadcom – from that discovery. The

18   only meaningful discovery that TSMC-NA provided related to the MTUA – discovery selectively

19   provided in hopes that it would serve the interests of TSMC and Broadcom.

20           TSMC could have sought to intervene to become a party in the ITC Proceeding, but elected not

21   to do so.[2] Presumably, TSMC did not want to open itself up to discovery in those proceedings or subject

22   itself directly to an ITC remedy. However, there is no dispute that TSMC heavily strategized with

23   Broadcom about the ITC Proceeding from the outset. TSMC has stipulated that ███████████████

24   ████████████████████████████████████████████████████████████████ Rice

25   Ex. 17. ████████████████████████████████████████████████

26

27   [2] Motions to intervene under to 19 C.F.R. § 210.19 are routinely granted if the intervenor has an interest
     in the proceeding. *See, e.g.*, *Certain Commc'ns or Computing Devices and Components Thereof*, Inv.

28   No. 337-TA-925, Order No. 6 (USITC Sept. 9, 2014) (granting Google's motion to intervene where
     infringement allegations were based on its Android operating system).

1

2

3

4

5                                                              *Id.* at ¶ 5. However, TSMC elected to

6  participate only behind the scenes, content to rely on Broadcom to represent its interests in the ITC

7  Proceeding and see whether this first bite at the apple would be successful.

8          TSMC also chose not to avail itself of other opportunities to address its concerns to the

9  Commission, apparently so that it could hold this action in its back pocket if the ITC ruled against

10  Broadcom and then deny that it already had a chance to litigate these issues. On three different

11  occasions, including two after the ID issued, the Commission invited the public, including TSMC, to

12  submit public interest statements. Rice Exs. 4, 5, 6. These were opportunities for TSMC to identify the

13  specific harm to its business that it would allegedly suffer for the Commission's consideration as it

14  carries out its statutory responsibility of weighing the public interest before issuing a remedy. *See, e.g.*,

15  19 U.S.C. § 1337(d)(1) (requiring the Commission to consider, before issuing an exclusion order, "the

16  effect of such exclusion upon the public health and welfare, competitive conditions in the United States

17  economy, the production of like or directly competitive articles in the United States, and United States

18  consumers"). A number of individuals and entities submitted public interest statements, but TSMC

19  never did. Instead, TSMC seeks to bypass the Commission, arguing only to this Court that the remedy

20  that the Commission may issue "will have a profoundly negative impact on American workers,

21  companies, and consumers." Mot. at 24. Ironically, TSMC relies almost entirely on public interest

22  statements that other parties filed in the ITC Proceeding – showing that it is simply asking this Court to

23  review the same material that is already before the Commission (but asking this Court to reach a

24  different conclusion). Mot. at 12-14, 24-25.

25          Even now, if the Commission makes a determination of no exhaustion, TSMC can appeal that

26  decision to the Federal Circuit as a "person adversely affected by a final determination." 19 U.S.C.

27  1337(c); *see LSI Comput. Sys., Inc. v. Int'l Trade Comm'n*, 832 F.2d 588, 589 (Fed. Cir. 1987) (non-

28

party that did not seek to intervene entitled to appeal ITC determination). This is the only appropriate

means for TSMC to address any aspect of the ITC's final ruling that TSMC believes is "incorrect."

### C.   Negotiation of the Limited CNS In The MTUA

TSMC claims that its IP libraries related to chip development may not be accessed by customers

without entering into an agreement that protects TSMC's intellectual property. Mot. at 6. On the

contrary. ███████████████████████████████████████

████████████████████ Rice Ex. 18 Q13.

████████████████████████████████████████████

██████████████████████ *Id.* Q25-███

████████████████████████████████████████████████

████████████████████████████████████

██████████████████ *Id.* Q22-24. ████████████████

████████████████████████████████████████████████

████████████████████████ *Id.* Q28-29.

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████

Rice Ex. 19 (emphasis added); *see also* Rice Ex. 20; Rice Ex. 18 at Q39-49.[3]

██████████████████████████████████████ Rice Exs. 19, 23; Rice Ex.

18 at Q45-48. ████████████████████████████████

████████████████████████████████████████

████████████████████ Rice Ex. 18 Q42.

████████████████████████████████████

████████████████████████████████ Rice Ex.

---

[3] ████████████████████████████████████████

████████████████████████ Rice Ex. 21 at 159:5-22.

1   18 Q45-48; 64-65; Rice Ex. 24 at 267:6-7 ██████████████████████████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████. at 7

4   (citing Ko Ex. 10). ████████████████████████████████████████

5   ██████████████████████████████████████████████████

6   ██████ Ko Ex. 10; Rice Ex. 25. ████████████████████████████

7   ██████████████████████████████████. Rice Exs. 26, 27, 28.

8   ████████████████████████████████████████████████████████

9   ██████████████████████████. Rice Ex. 18 Q48-49, 53; Rice Ex. 29 at 9; Rice Ex. 21 at 29:11-22.

10  ██████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ██████████████████████████████████ Rice Ex. 18 Q47-48. ████████████

13  ████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ████████████████████████████ *Id.* Q48. ████████████████████

16  ████████████████████████████████████████████████████████

17  ██████████████████████████ *Id.* Q49-57; Rice Ex. 24 at 290:3-7; Rice Ex. 30.

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ████████████████████████████████████████████ Rice Ex. 31; Rice Ex.

22  32; Rice Ex. 18 Q63. The CNS provision in the executed MTUA is as follows:

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  Londen Ex. 16; Rice Ex. 18 Q32-34.

27

28

In sum, TSMC accepted a significantly narrowed CNS that ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ Rice Ex. 24 at 287:12-88:14; Rice Ex. 18 Q64. After TSMC agreed to these limitations, TSMC never took the position (until filing this motion) that the CNS exhausted Cypress's patent rights or otherwise protects TSMC's customers. Rice Ex. 18 Q64-65.

Notably, this extrinsic evidence was undisputed in the ITC Proceeding. Cypress is the only MTUA signatory that provided testimony at the hearing, through Dr. Mehran Sedigh, regarding its understanding of the CNS. Dr. Sedigh was involved on Cypress's behalf throughout the MTUA negotiations, and his testimony was completely consistent with the written drafting history of the CNS provision. TSMC, the other signatory, did not produce any documents, present any witnesses, or even take a position on the meaning of the CNS. TSMC-NA – TSMC's wholly-owned subsidiary which is not actually a party to the agreement – provided the witness statement of its representative, Stephen Kuo, but it was withdrawn by the ITC Respondents. ███████████████████████████ ████████████████████████████████████████████████████████████ ████████ Rice Ex. 24 at 72. TSMC still has not offered any witness involved in the MTUA's drafting to support its attempt to rewrite the CNS.

### D.   Tessera's Purchase Of The '946 Patent

TSMC's description of Tessera as a "patent licensing company" "in the business of suing alleged infringers" that "claims" to develop its own technology, Mot. at 11 & Complaint (DI 1) ¶ 33, mischaracterizes Tessera and its business. Tessera is part of Xperi Corporation, a publicly-traded research and development technology company based in San Jose with 27 offices around the world and approximately 700 employees (over 450 of whom are scientists and engineers). Rice Ex. 8 at 6, Ex. 9. Tessera and its affiliates will spend over $100 million on R&D in 2017, and generate approximately half of their revenues from product sales – not from patent licensing or litigation. Rice Ex. 8 at 4, 23. Tessera and its affiliates are *practicing* entities that research and develop products in three areas: (i) audio (through its affiliate DTS, the main competitor to Dolby, and which makes products such as HD Radio[®] widely used in automobiles), (ii) imaging (through its affiliate FotoNation, a software company that

makes face detection, face tracking, red eye removal, and other camera features that people use every day in their smartphones), and (iii) semiconductors (through its affiliate Invensas, which makes next-generation semiconductor packaging, bonding, and interconnect technologies). Rice Ex. 8. Tessera and its affiliates' products are real hardware, software, firmware, and other technologies that they transfer to their customers, which use them in their own products. *Id.* Indeed, Broadcom has filed a retaliatory ITC case against Tessera's affiliates, alleging that their products infringe a Broadcom patent. Rice Ex. 10.

More than 75 percent of Tessera's and its affiliates' patents and patent applications are "home-grown," but like many companies, Tessera also sometimes acquires related patents to give itself and its customers more freedom to commercialize their technologies. In March 2014, Tessera purchased the '946 patent from Cypress. ███████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ Rice Ex. 22 at 19-21. On the contrary, ██████████████████████████ ███████████████████ *Id.* at 23.

## III.   TSMC'S MOTION SHOULD BE DENIED

To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "An injunction is a matter of equitable discretion and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Bridgestone Brands, LLC v. Dastgah*, 2016 WL 1070670, at *2 (N.D. Cal. Mar. 18, 2016) (quoting *Winter*, 555 U.S. at 22). TSMC does not come close to meeting any of these requirements.

### A.   TSMC Does Not Have a Likelihood Of Success On The Merits

#### 1.   TSMC Is Seeking Unprecedented Relief

TSMC, which is not a party in the ITC Proceeding, has provided no authority to support its extraordinary attempt to enjoin activity in that proceeding. While the motion is nominally directed

towards Tessera, the ITC Proceeding is more than a dispute between private parties. Tessera filed a detailed Complaint accompanied by thousands of pages of declarations, claim charts, and other exhibits and appendices. The Commission reviewed the Complaint and launched a government investigation by invoking its authority under Section 337, 19 C.F.R. 210.10 (2015). Rice Ex. 11. If the Commission affirms the ID, the Commission will enter remedies to protect the domestic industry, and it will be ready to defend these remedies itself on appeal to the Court of Appeals for the Federal Circuit. TSMC does not cite any case, and Tessera is not aware of one, in which a district court has allowed a non-party to enjoin activity in an ITC Proceeding, let alone to do so after a violation is found and remedies are entered.

TSMC nonetheless argues that "[a]mple authority supports enjoining a complainant like Tessera from participating in ITC proceedings or litigation because its participation *runs contrary to contractual restrictions*." Mot. at 19 (emphasis added). The "ample authority" cited by TSMC consists of four cases, all of which are readily distinguishable. In two, the litigant was enjoined from proceeding in the ITC because it had contractually agreed via forum selection clauses only to proceed in another venue. *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331–32 (Fed. Cir. 2000) (requiring litigation to "take place in California"); *Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 2010 WL 5559750 (D.N.M. Nov. 30, 2010) (requiring litigation in New Mexico district court).[4] The other cases involve anti-suit injunctions entered because the patentees were asserting standards-essential patents without complying with their obligation to first offer a license on RAND terms. In both, the party seeking an injunction was also a party in the other litigation, and the court issuing the injunction had before it the RAND breach of contract action justifying the injunction. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) (affirming entry of foreign anti-suit injunction to bar enforcement of German injunction where German patent was subject to RAND obligation at issue in U.S. action);[5] *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1005 (N.D. Cal. 2013) (LSI breached contractual obligations

---

[4] TSMC cites *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, No. 10-cv-1020, 2010 U.S. Dist. 137160 (D.N.M. Dec. 7, 2010). This is a later decision not related to the grant of the injunction.

[5] TSMC cites to the second appeal, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015), but the 2012 appeal is the one that addressed the foreign anti-suit injunction.

"by instigating an ITC Section 337 action naming Realtek as a respondent *prior to* offering a RAND license to Realtek."). Here, none of the patents-in-suit in the ITC Proceeding is "standards essential" or involves any contractual "RAND" obligations. Therefore, these cases are inapplicable.

In short, the few courts that have enjoined ITC complainants have done so only at the early stages of the ITC proceeding,[6] and only in limited circumstances where there is a contractual forum selection clause or a RAND obligation that rendered the proceeding in the ITC premature. TSMC cites no authority in which a *non-party* to an ITC proceeding (here, TSMC) has obtained an injunction to stop a party's participation in an investigation or to block communications with the Commission or U.S. Customs and Border Protection regarding enforcement of remedies entered by the Commission. There is no colorable argument here that the ITC is an incorrect forum; TSMC's argument is only that the ITC may affirm a decision on the merits of the exhaustion issue with which TSMC disagrees and which TSMC can appeal to the Federal Circuit.

### 2.    The ITC's Ruling Precludes Any Finding of Likelihood of Success

In most cases, a party seeking a preliminary injunction is not trying to relitigate an issue that has already been decided in another forum. But in this case, TSMC raises the same arguments that Respondents raised and the ALJ rejected in the ITC Proceeding when she found that the MTUA does not authorize sales by TSMC and therefore does not exhaust Tessera's rights in the '946 Patent. The ALJ made this determination based on the full evidentiary record, following a five-day hearing, and after considering several rounds of briefing. At the time of the hearing on this motion, the Commission also may have affirmed the ALJ's decision. Because Tessera has already won this issue on the merits in another forum, it not "likely" that TSMC will win on it in this Court. The ITC's ruling in Tessera's favor alone warrants denial of TSMC's motion.[7]

---

[6] In contrast to TSMC's extended delay and strategic decision to first see how the ALJ would rule, plaintiffs in the cases cited by TSMC brought suit within months of the ITC complaints. *Realtek*, 946 F. Supp. 2d at 1002 (filed within four months of ITC complaint); *Tex. Instruments,* 231 F.3d at 1327 (filed within one week of ITC complaint); *Gen. Protecht*, 2010 WL 5559750, at *1, *4 (filed within three months of ITC complaint).

[7] TSMC argues that ITC determinations are not binding on this Court, Mot. at 17 n.8, but this misses the point. Tessera is not arguing collateral estoppel, but rather, that the ITC's ruling in Tessera's favor demonstrates that there is no likelihood that relitigating the issue here will result in a different outcome.

### 3.    The CNS Does Not Exhaust Tessera's Patent Rights

#### a)    Exhaustion of Patent Rights Requires an Authorized Sale

Although TSMC's motion should be denied on multiple other grounds, if the Court decides to re-evaluate the merits of its claim it should reach the same result as the ITC. As the ALJ correctly observed, "[t]he relevant question for patent exhaustion is . . . whether the covenant authorizes TSMC's sales to its customers." ID at 65-66 (citing *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1277 (Fed. Cir. 2009). A patent owner has a bundle of rights as part of the monopoly granted by the patent laws, including the right to preclude others from making products that infringe the patent and the separate rights to preclude use, offers to sell, sale, and importation of such products. It can license all of those rights, but the patentee also ". . . is free to relinquish only a portion of its bundle of patent protections." *Impression Prods.*, 137 S. Ct. at 1534. As with the MTUA at issue here, a patent owner can grant the right to make, but not sell, products covered by the patent. Under these circumstances, sales by the licensee do not exhaust the patent owner's rights to enforce the patent. *TransCore*, 563 F.3d at 1277; *see also Impression Prods.*, 137 S. Ct. at 1535 ("if a patentee has not given authority for a licensee to make a sale, that sale cannot exhaust the patentee's rights").

#### b)    The MTUA is Ambiguous and Therefore Must Be Interpreted to Give Effect to the Mutual Intent of The Parties at the Time of Contracting

As the ALJ correctly found, the CNS provision of the MTUA is ambiguous – it does not grant unlimited authorization to TSMC and is susceptible to the interpretation that TSMC's rights are limited to "making" or "using." Rice Ex. 15 (Order 49 at 5); Rice Ex. 16 (ID at 65). Accordingly, the MTUA "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *see also id.* § 1649 (if terms are "in any respect ambiguous or

---

The *same legal and factual issues* raised by TSMC have been heard and ruled on in the ITC based on a full evidentiary record and it would be appropriate for this Court to afford persuasive value to the ITC determinations. *See Cellco P'ship v. Broadcom Corp.*, 227 F. App'x 889, 890 (Fed. Cir. 2007) (deferring to ITC proceedings on identical issues for ITC's "persuasive value"); *see also Flores v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846, 852 (Cal. Ct. App. 1995) (if second proceeding involves an instrument identical with the one dealt with in the first proceeding, but collateral estoppel does not apply, the court may still place reliance upon the first decision).

1  uncertain," extrinsic evidence must be considered to interpret contract "in the sense in which the

2  promisor believed, at the time of making it, that the promisee understood it").[8]

3      California law requires a court to consider parol evidence to determine whether a contract is

4  "reasonably susceptible" to a party's proffered interpretation, even if the court views the contract as

5  unambiguous on its face. *First Nat'l Mortg. v. Fed. Realty Inv. Trust,* 631 F.3d 1058, 1067 (9th Cir.

6  2011) ("[U]nder the California parol evidence rule, '[t]he test of admissibility of extrinsic evidence to

7  explain the meaning of a written instrument is not whether it appears to the court to be plain and

8  unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the

9  language of the instrument is reasonably susceptible.'") (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas*

10  *Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968)). A court is not supposed to determine which

11  interpretation it thinks is *correct*, but instead must ascertain whether the non-moving party's

12  interpretation is at least "reasonab[le]." *See Id.* "To the extent that determining the intention of the

13  parties to the license agreement requires evaluation of parol evidence, [this is] a question of fact." *Alfred*

14  *E. Mann Found.*, 604 F.3d at 1359. As long as the contract terms are "reasonably susceptible" to an

15  interpretation, it is appropriate to inquire into the intended meaning even if there is an integration clause.

16  *Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 237 Cal. App. 4th 1342, 1354 (Cal. Ct. App. 2015).

17      TSMC disregards the relevant drafting history – including the undisputed fact that ███

18  ██████████████████████████████████████████████████ – and argues that

19  the "plain language" of the CNS would cover sales by TSMC. Mot. at 15. TSMC's interpretation of the

20  CNS is not supported with the language of the MTUA itself – as it must be if the MTUA is

21  unambiguous, as TSMC claims. Instead, TSMC supports its interpretation of the CNS the same way

22  Respondents did in the ITC Proceeding: with *extrinsic evidence* regarding the nature of TSMC's

23  business as a foundry. The ALJ properly rejected this approach, and in any event, testimony about

24  TSMC's present-day manufacturing business ██████████████████████

25  ████████████████████████████████████████████████████████

26

27  [8] There is no dispute that California law applies. Mot. at 15 n.6 (citing MTUA § 11). Whether the CNS
authorizes TSMC's sales is an issue of contract interpretation subject to state law. *See, e.g., Alfred E.*

28  *Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (holding that
license agreement should be interpreted under California law).

1  █████████████████████████████████████████████████████████████

2  ███████████████████████████ ID at 67. A contract cannot be interpreted to include language that was

3  rejected during contract negotiations. *See Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1440–

4  41 (9th Cir. 1994). *See also* Cal. Civ. Code § 1648 (contract "extends only to those things concerning

5  which it appears that the parties intended to contract."). Certainly the fact that ██████████████

6  █████████████████████ undercuts TSMC's argument that "manufacturing services" somehow

7  unambiguously███████████████████████████████████████ .

8          **c)**      **The MTUA does not Confer "Sell" Rights on TSMC**

9        TSMC cannot prove exhaustion because the CNS does not confer on TSMC the right to sell

10  infringing products to its customers, as is required for patent exhaustion. As noted above, the unrebutted

11  extrinsic evidence of the parties' negotiations establishes that ███████████████████████████

12  ████████████████████████████████ Rice Ex. 18 Q45-48, 64-65. █████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████ . *See,*

17  *e.g.*, Rice Ex. 21 at 87:19-88:4, 81:7-9 9. Under California law, Cypress's communicated interpretation

18  of the CNS is controlling. *See Cty. of Los Angeles v. Raytheon Co.*, 159 Cal. App. 4th 27, 40 n.11 (Cal.

19  Ct. App. 2008) (meaning attached by one party operative if communicated to the other party, the other

20  party did not offer a different meaning, and the offering party does not know or have reason to know of

21  any different meaning being attached by the other party) (quoting Rest. 2d Contracts, § 20(2)).

22        The limited scope of the CNS is consistent with the ██████████████████████

23  ███████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████ .

25  Rice Ex. 18 Q23-24. ████████████████████████████████████████████

26  ██████████████████████████████████████████████████

27
28       ██████████████████████████████████████████████████████



ID at 68 (JX-0501C is Londen Ex. 16, submitted with TSMC's motion; CX-4807C is Rice Ex. 18).

The limited scope of the CNS also is consistent with Federal Circuit authority. In *TransCore*, the Federal Circuit held that a CNS can confer "make" and *not* "sell" rights, and this limited grant does not exhaust patent rights. 563 F.3d 1271. The covenant at issue in *TransCore* was part of a settlement agreement and provided a complete and unrestricted prohibition on claims of any kind. *Id.* at 1273. But the Federal Circuit went on to state that a CNS – such as the CNS in the MTUA – could be qualified to limit the authorization and *not* include the right to sell. *Id.* (noting that "TransCore did not, as it could have, limit this authorization to, for example 'making' or 'using.'"). *See also Impression Prods.*, 137 S. Ct. at 1534–35 (a patentee "is free to relinquish only a portion of its bundle of patent protections . . . [I]f a patentee has not given authority for a licensee to make a sale, that sale cannot exhaust the patentee's rights."); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1393 (N.D. Ill. 1993) (Easterbrook, J.) ("Making and selling are independently forbidden unless the owner of the patent consents.") *aff'd on other grounds,* 71 F.3d 1573 (Fed. Cir. 1995). Here, Cypress and TSMC expressly limited the authorization to TSMC's "manufacturing services" and did *not* authorize ▮▮▮▮ ▮▮▮▮ to TSMC's customers.

Federal Circuit authority on the Section 102(b) on-sale bar (*i.e.*, sales by the patent holder more than one year before the patent's filing date invalidates the patent) is analogous to exhaustion and also supports this result. In *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363 (Fed. Cir. 2016), the Federal Circuit held that "the mere sale of *manufacturing services* by a contract manufacturer . . . to create embodiments of a patented product for the inventor does not constitute a 'commercial sale' of the invention." *Id.* at 1373(emphasis added). The Federal Circuit rejected "the notion that, where the patent is to a product [as the '946 Patent is], the performance of the unclaimed process of creating the product" is a sale of the product itself. *Id.* at 1374.

1    Rather than presenting any new evidence, TSMC repeats several arguments the ITC Respondents

2    raised. Each of these arguments was rejected by the ALJ, and if reached here, they all should be rejected

3    again. First, TSMC claims that Cypress was aware that TSMC sells products in connection with the

4    manufacturing services it provides to customers, such that CNS must have been intended to cover such

5    sales. Mot. at 6. But such awareness does not change the actual drafting history of the MTUA ███

6    ██████████████████████    As the ALJ ruled:

7    ███████████████████████████████████

8    ███████████████████████████████████

9    ██████████████████████████████████████

10   ID at 67. ████████████████████████████

11   █████████████████████████████████

12   ██████

13   ███████████████████████████████████

14   ██████████████████████████████████

15   ███████████████████████████████

16   *Id.* Q48. The law disfavors contract interpretations that lead to such absurd results. *See Intel Corp. v.*

17   *Int'l Trade Comm'n*, 946 F.2d 821, 827 (Fed. Cir. 1991) (rejecting "strained construction").

18   Second, TSMC argues that Cypress stated that ████████████████

19   ████████████████████████. Mot. at 9. ████

20   ███████████████████████████████████

21   ███████████████████████████████████

22   ████████████████████████████████ *See*

23   ID at 67 ████████████████████████

24   ███████████████████████████████████

25   ██████████████████ (The cited testimony referenced in the ID is Rice Ex. 24 at 268.)

26   The drafting history of the MTUA refutes these arguments. ██████████████

27   █████████████████████████████████. *See* Ko

28   Ex. 8 ████████████████████████

1

2

3

4

5

6                Mot. at 19.

7

8

9 [9]

TSMC is seeking an incredible and unwarranted reshaping of the business deal it struck with Cypress. If TSMC's argument is accepted, it would mean that

*See* Rice Ex. 18 Q71-72; Rice Ex. 24 at 287:12-24.

. The ALJ properly rejected this absurd result.

### 4. The CNS Does Not Bind Tessera

Even if the CNS was a commitment by *Cypress* not to sue TSMC for TSMC's sales to its customers (and it was not), this obligation is not binding on Tessera.

---

[9] The ALJ found that the fact that Cypress did not join TSMC to any litigation against TSMC's customers could have reflected business concerns, and did not bear on the scope of the CNS. ID at 67 [Cypress's] decision not to assert these rights in litigation may not have been based on the scope of the covenant but on other factors, such as a desire to preserve their business relationship."). To the extent the parties' subsequent conduct is relevant, Ex. 18 Q49; Rice Ex. 24 at 291:4-8. This is consistent with the parties' understanding that the covenant did not exhaust Cypress's patent rights.



Londen Ex. 16 (MTUA) § 9 (emphasis added); *see also* Rice Ex. 18 Q35-37. ███████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ Rice

Ex. 18 Q35-37. In fact, Tessera did not even know about the MTUA until it was produced in the ITC

Proceeding. Any obligations that Cypress assumed under the CNS did not transfer to Tessera.

### B.   TSMC's Delay In Seeking Relief Shows It Does Not Face Irreparable Harm

In order to obtain a preliminary injunction, TSMC must show that it will suffer irreparable harm

if a preliminary injunction is not entered. "[C]onclusory or speculative allegations are not enough. . . .

Irreparable injury means an injury that is imminent, and that cannot be remedied by an award of

money." *TPW Mgmt., LLC v. Yelp Inc.*, 2016 WL 6216879, at *11 (N.D. Cal. Oct. 25, 2016) (internal

citations omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is

inconsistent . . . injunctive relief as an extraordinary remedy . . . .". *Winter*, 555 U.S. at 22.

TSMC's claim of irreparable harm is undermined by its tactical and unreasonable delay in

seeking relief. If TSMC really faced irreparable harm, it would have acted immediately in the ITC or in

this Court rather than waiting to see how the ITC case turned out before trying to relitigate the

exhaustion issue at this late date. There can be no dispute that:

- Since no later than May 2016 – a year and a half ago – when the Complaints asserting the '946 Patent were filed in the ITC Proceeding and in the District of Delaware, TSMC has known that Tessera is asserting the '946 patent against Broadcom and the ITC Respondents.

- Since no later than June 2016, TSMC has known that ███████████████████ ████████████████████████████████████ Rice Ex. 33 (June 10, 2016 letter produced as TSMCLTD00000028-29).

- Since no later than September 2016, TSMC has known about and participated in the potential exhaustion defense in the ITC; indeed, the MTUA was produced at that time by TSMC-NA. Rice Decl. ¶ 42; Rice Ex. 17.

- Since no later than November 2016, TSMC has known that Broadcom and other Respondents moved for summary determination on the exhaustion issue; and Stephen Kuo of TSMC-NA provided a declaration in support of the ITC Respondents' motion. *Id.*

- Since no later than December 2016, TSMC has known about the ALJ's December 5, 2016 order denying the Exhaustion MSD, finding the MTUA ambiguous on the issue of exhaustion and setting that issue to be decided at a trial on the merits. *Id.*

- Since no later than July 2017, TSMC has known about the ALJ's purportedly "incorrect" interpretation of the MTUA and her determination that the MTUA does not authorize TSMC sales and therefore does not exhaust Tessera's rights in the '946 Patent. *Id.*

TSMC could have sought the same relief it is seeking through this motion – to prevent Tessera from making certain assertions in the ITC – when Tessera filed its ITC case in May 2016. But TSMC waited nearly a year and a half, only after selectively participating in the ITC Proceeding and seeing how the ID would turn out. Even after the ID issued, TSMC still *waited more than three months* to file its motion. TSMC has not – because it cannot – point to any change of circumstances that would justify its delay.

It is well established that a "'plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.'" *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 2009 WL 10670331, at *3 (C.D. Cal. July 27, 2009) (quoting *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (no irreparable harm given ten month delay) (citation omitted); *Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 5925584, *4 (C.D. Cal. Oct. 19, 2005) (denying motion for preliminary injunction against ITC participation, finding "contentions concerning irreparable harm carry little weight in the face of . . . months-long delay in raising the issue of the forum selection clause."); *iFreedom Direct Corp. v. McCormick*, 2016 WL 9049647, at *4 (C.D. Cal. June 15, 2016) (delay of 10 months "undermine[d] claim of irreparable harm"); *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (three-month delay in seeking injunctive relief inconsistent with claim of irreparable harm); *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1132 (S.D. Cal. 2014) (delay of at least seven months weighed against finding of irreparable harm); *Television Educ., Inc. v. Contractors Intelligence School, Inc.*, 2017 WL 2958729, at *5 (E.D. Cal. July 11, 2017) (thirteen-month delay from discovery of alleged infringement and almost twelve-month delay from filing of suit "weighs heavily against a finding of irreparable harm.").

Further, TSMC's complaints about the "incorrect" interpretation of the MTUA in the ITC Proceeding should not be heard in equity at this late date. TSMC chose not to intervene in the ITC Proceeding, as interested parties commonly do, to assert the exhaustion defense. TSMC chose not to present a knowledgeable witness with regard to negotiation of the MTUA or even to take a position on the scope of the CNS in the MTUA. TSMC also chose not file a public interest statement to the

1   Commission setting forth the alleged harms of an exclusion order even though the Commission solicited

2   comments from the public three times, twice after the ID issued. Rice Exs. 4, 5, 6.

3          In any event, the ITC Proceeding is nearly concluded with the Commission's final determination

4   expected in a matter of weeks and before TSMC's motion is to be heard. Even if TSMC's requested

5   relief were granted, it would not overturn the Commission's final determination and that determination

6   will go forward to enforcement and appellate review in due course as set forth in the ITC's governing

7   statute. In *Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd*., 2011 WL 5402667, at *1 (D. Del.

8   Nov. 8, 2011), the district court addressed very similar circumstances – the plaintiff tried to enjoin

9   participation in a well-advanced ITC proceeding after waiting many months before filing the district

10  court action – and found no irreparable harm. The same is true here.

11         **C.    The Balance Of Hardships Weighs In Tessera's Favor**

12         TSMC has not demonstrated, as it must, that the balance of hardships favors an injunction. In

13  determining whether TSMC has met this burden, "the district court has a 'duty . . . to balance the

14  interests of all parties and weigh the damage to each.'" *Stormans, Inc. v. Selecky*, 589 F.3d 1109, 1138

15  (9th Cir. 2009) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203

16  (9th Cir. 1980)). Here, the hardships of an injunction would fall much more on Tessera than TSMC.

17         First, the '946 Patent – and therefore an ITC exclusion order based on infringement of the '946

18  Patent – will expire in October 2018. A preliminary injunction entered at this late date would

19  irreversibly rob Tessera, and the domestic industry protected by the '946 Patent, of meaningful rights

20  under a patent that has been adjudicated valid by the PTAB, the ALJ, and, if it affirms, the ITC.

21         Second, TSMC's requested injunction would cause Tessera significant harm. As a publicly-

22  traded company, an injunction would cause a significant loss of investor confidence and market

23  capitalization. In a prior ITC investigation involving Tessera, the ALJ issued a stay of the proceedings

24  just before the evidentiary hearing was scheduled to begin. *Certain Semiconductor Chips With*

25  *Minimized Package Size and Products Containing Same*, Inv. No. 337-TA-605, Order No. 52 (Feb. 26,

26  2008) (Rice Ex. 12). Tessera's stock dropped 34 percent soon after. Martinez Decl. ¶ 22. In vacating the

27  stay, the Commission expressly found that "Tessera's substantial investments could be lost irrespective

28  of the merits of the patent dispute in question if the stay is granted." *See Semiconductor Chips*, Inv. No.

337-TA-605, Comm'n Op. at 9 (May 27, 2008) (Rice Ex. 13). A preliminary injunction would have the same, or worse, effect here where the proceedings are more advanced. Based on Tessera's current capitalization, a stock drop of this percentage would mean a loss of market capitalization of more than $300,000,000.00. Martinez Decl. ¶ 22.

Third, TSMC's eleventh-hour forum shopping weighs against it. *See*, *e.g.*, *Castellanos v. Countrywide Bank NA*, 2015 WL 1906074, at *6–7 (N.D. Cal. Apr. 27, 2015) (plaintiff's forum shopping in filing in district court after filing two earlier actions weighed against plaintiff in balancing hardships). TSMC cannot claim to be the aggrieved party when it strategically gauged its level of participation in the ITC Proceeding, waited to see how the ITC decision would turn out, and then mounted this improper collateral attack rather than present its arguments in the proper forum. This is not the type of "harm" to be redressed by a preliminary injunction. *See*, *e.g.*, *Lite On It Corp. v. Toshiba Corp.*, 2009 WL 10673953, at *3 (C.D. Cal. Jan. 12, 2009) (refusing preliminary injunction after wait-and-see forum-shopping "gambit" failed).

Finally, TSMC has not established that the alleged lost revenue from sales to Broadcom imposes more of a hardship than would be imposed on Tessera and its licensees. First, the claimed █████████ of potential lost revenue is less than ███ of TSMC's total reported 2016 annual revenue of US$29.43 billion, given the company's massive size. Rice Ex. 34. Second, the ████████ appears to be a "guesstimate" that TSMC could not corroborate through discovery. Tessera provided TSMC with the list of TSMC-fabricated Broadcom chips that will be subject to an exclusion order and requested that TSMC produce documents sufficient to show TSMC revenues for those products. When TSMC claimed it could not identify the products using the Broadcom product numbers, Tessera explained that it has established infringement by *all* Broadcom products in seven technology nodes (16nm, 20nm, 28nm, 45/40nm, 65/60/55nm, 90nm, and 130nm) and that TSMC could run revenue numbers based on the technology node. Rice Decl. ¶ 20. TSMC refused to do so, and merely repeated the ███ million figure, with no documentary support. In any event, even accepting TSMC's speculative estimate of economic harm, it does not outweigh the hardship that would result from a prior restraint on Tessera's participation at the ITC and Customs. *See* Sections III.E below.

### D.  TSMC Has Not Shown That An Injunction Is In The Public Interest

If the Commissioners affirm the ID, it means the federal agency charged with protecting U.S. domestic industries from unfair trade practices has determined, based on its own extensive fact finding and legal determinations, that the public interest favors ITC remedies. Here, TSMC "bear[s] the initial burden of showing that the injunction is in the public interest." *Stormans*, 586 F.3d at 1139 (citation omitted). Instead, TSMC is asking this Court to substitute its own judgment for the ITC's on this issue.

The public interest in exclusion and cease-and-desist orders is an issue expressly and squarely before the Commission in the ITC Proceeding. Rice Ex. 6 (Commission Review Notice) ("If the Commission contemplates some form of remedy, it must consider the effects of that remedy upon the public interest. The factors the Commission will consider include the effect that an exclusion order and/or cease and desist orders would have on (1) the public health and welfare, (2) competitive conditions in the U.S. economy, (3) U.S. production of articles that are like or directly competitive with those that are subject to investigation, and (4) U.S. consumers.") The ITC issued a notice asking for comments from the public on the impact of the exclusion order, and a number of third parties took the opportunity to file public interest statements with the ITC. *Id.* TSMC was not one of them. If TSMC really was going to be irreparably harmed by the exclusion order, why did it not voice its concerns to the agency that would issue it, when it asked for public comment?

If the Commission enters a remedy, it will be based on determinations that (a) there is widespread infringement of the asserted claims of the '946 patent by the ITC Respondents; (b) there is a domestic industry based on practice of the patent by Tessera's U.S. licensees, Cypress and Micron (who supported Tessera in its ITC case); (c) the asserted claims are valid; and (d) the CNS in the Cypress-TSMC MTUA does not authorize sales by TSMC and therefore does not exhaust Tessera's patent rights. While these determinations may not be binding on this Court, this does not mean they should be disregarded, particularly when this Court is being asked to grant extraordinary relief that concerns the legislative mandate of the ITC. And if the Commission finds a section 337 violation, the public interest weighs against an injunction and in favor of protecting Tessera's intellectual property rights. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation. Indeed, the 'encouragement of investment-

1   based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'") (citation omitted); *Abbot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("public is best served by enforcing patents that are likely valid and infringed"). The public interest in enforcement is particularly strong given the substantial investments by Tessera's licensees in manufacturing articles protected by the patent. ID at 232. There is also "a strong public interest that weighs in favor of allowing the completion of the ITC proceedings." *See Broadcom*, 2006 WL 5925584, at *5.

TSMC nonetheless argues that an injunction should be entered to prevent alleged disruption of the U.S. economy and harm to consumers, relying on the copied-and-pasted statements, offered with little or no evidentiary support, already before the ITC. As Tessera has shown, the claims of harm are belied by the variety of alternatives available due to intense competition in the semiconductor market and the markets for products of the Customer Respondents. Rice Ex. 35 (Martinez & Akeman declarations). TSMC has not shown that the public interest favors an injunction that would allow for continuing infringement of the '946 patent and resulting harm to Tessera and its licensees.

### E.   If An Injunction Is Granted, TSMC Should Be Required To Post A Bond Of The Same Amount The ITC Respondents Would Have Posted During The Presidential Review Period But For The Injunction

TSMC has not shown entitlement to a preliminary injunction. If, however, the Court grants TSMC's motion, it would need to impose a bond to protect Tessera against the costs and damages that would occur. Federal Rule of Civil Procedure 65(c) provides that no preliminary injunction can issue unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount is in the district court's discretion. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

During the 60-day Presidential Review Period, an infringer must post a bond in any amount sufficient to "protect complainant from any injury" in order to import and/or sell products that are subject to the ITC's importation ban and cease-and-desist orders. 19 U.S.C. 1337(j)(3). If an injunction were to be issued in this action, the bond should be set to an amount equal to 75 percent of the amount of the bonds that would have otherwise been posted by Broadcom and the other ITC Respondents during the 60-day period. This corresponds to the percentage of infringing Broadcom and Customer Respondent products with chips fabricated by TSMC. Martinez Decl. ¶ 11; Martinez Ex. 8. This amount

is reasonable as it would provide security for only a portion of the harm that Tessera will suffer, which will also include loss of market capitalization and impacts extending past the 60-day period. But these Presidential Review-period bonds are quantifiable and, but for the injunction, would be required for infringing sales during the 60-day period. Tessera would be entitled to recover the Presidential Review-period bonds once the exclusion order is affirmed on appeal; so too would Tessera be entitled to recover the preliminary injunction bond if the injunction is determined to have been improvidently granted. Therefore, the purposes of the respective bonds coincide, and for this reason, the injunction bond should replace the Presidential Review-period bonds, and in the same amount.

TSMC admits that Broadcom's bond for sales of infringing products will exceed $80 million, Mot. at 12. Tessera accepts this figure for a portion of the injunction bond. However, TSMC fails to mention that the other ITC Respondents will also need to separately post a bond for their importation and sale of end products containing infringing Broadcom chips. TSMC assumes (based on the ID) that the bond amount will be 100 percent of the declared value of these goods at customs, and these products – which include, for example, mobile devices, set-top boxes, routers, modems, and network switches – are substantially more expensive than Broadcom's imported chips. Tessera submits with its opposition the Declaration of Christopher A. Martinez, who has calculated the expected bond amounts to be posted to the ITC by all the ITC Respondents and applied a 25 percent discount. Based on that calculation, the injunction bond should be set to an amount not less than $566,565,000,00. Martinez Decl. ¶ 7.

## IV.   CONCLUSION

For all of the foregoing reasons, Tessera respectfully requests that the Court deny TSMC's motion for a preliminary injunction.

Dated:  November 13, 2017

COVINGTON & BURLING LLP

*/s/ Michael K. Plimack*
Michael K. Plimack (SBN 133869) (mplimack@cov.com)
Dale A. Rice (SBN 146249) (drice@cov.com)
Nitin Subhedar (SBN 171802) (nsubhedar@cov.com)
One Front Street
San Francisco, CA 94111
Telephone:    (415) 591-6000
Facsimile:    (415) 591-6091

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TESS HAMILTON (Bar No. 279738)
tahamilton@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
Telephone:     (650) 632-4700
Facsimile:     (650) 632-4800

Bradley K. Ervin (Admitted Pro Hac Vice)
Daniel E. Valencia (Admitted Pro Hac Vice)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
Telephone:     (202) 662-6000
Facsimile:     (202) 662-6291

*Attorneys for Defendants Tessera, Inc., Tessera Technologies, Inc. and Invensas Corporation*