1    JACK W. LONDEN (CA SBN 85776)
     jlonden@mofo.com
2    WESLEY E. OVERSON (CA SBN 154737)
     woverson@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California 94105-2482
     Telephone:    (415) 268-7000
5    Facsimile:    (415) 268-7522

6    Attorneys for Plaintiff
     TAIWAN SEMICONDUCTOR MANUFACTURING
7    COMPANY LIMITED

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   TAIWAN SEMICONDUCTOR                    Case No.    5:17-cv-05888 BLF
     MANUFACTURING COMPANY LIMITED,
13
                    Plaintiff,
14                                           **TAIWAN SEMICONDUCTOR**
          v.                                 **MANUFACTURING COMPANY**
15                                           **LIMITED'S OPPOSITION TO**
     TESSERA, INC., TESSERA TECHNOLOGIES,    **MOTION TO DISMISS**
16   INC., INVENSAS CORPORATION
                                             Date:      December 21, 2017
17                  Defendants.              Time:      9:00 a.m.
                                             Ctrm:      Courtroom 3 – 5th Floor
18

19

20

21

22           **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3   I.     INTRODUCTION...................................................................................................... 1

4   II.    LEGAL ANALYSIS. ................................................................................................ 2

5          A.    TSMC Has Established Multiple Independent Bases For Subject-Matter
                 Jurisdiction. ................................................................................................... 2

6                1.    Diversity Jurisdiction Is Proper.......................................................... 2

7                2.    TSMC Has Also Established Federal Question And Patent Law
                       Jurisdiction. ......................................................................................... 5

8          B.    TSMC Has Standing. ...................................................................................... 7

9                1.    TSMC Has Established Redressability. ................................................ 8

                 2.    TSMC Has Established Causation. ..................................................... 12

10         C.    TSMC Brought Suit To Confirm The Effect Of Its Contract Rights, Not To
                 Punish Protected Speech. .............................................................................. 12

11               1.    *Noerr-Pennington* Does Not Apply To TSMC's Action. ......................... 12

12                     a.    Under Ninth Circuit Law, *Noerr-Pennington* Cannot Apply
                             Where Petitioning Rights Were Previously Waived By
13                           Contract. .................................................................................. 13

14                     b.    Tessera's Cases Confirm That *Noerr-Pennington* Does Not
                             Apply.......................................................................................... 15

15               2.    The California Litigation Privilege Does Not Bar This Action. .............. 16

16               3.    Tessera's Special Motion To Strike Under the California Anti-
                       SLAPP Statute Should Be Denied. ..................................................... 18

17         D.    The Court Should Not Abstain From Deciding This Case. ............................. 19

18  III.   CONCLUSION........................................................................................................ 22

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

*Anderson Plant LLC v. Batzer Constr., Inc.*,
   No. 15-cv-01966, 2015 WL 4572294 (N.D. Cal. July 29, 2015)...................................4

*Animal Legal Def. Fund v. Veneman*,
   469 F.3d 826 (9th Cir. 2006)...................................................................................8, 12

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) .......................................................................14

*Barnstead Broad. Corp. v. Offshore Broad. Corp.*,
   865 F. Supp. 2 (D.D.C. 1994) ........................................................................................14

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
   886 F. Supp. 377 (S.D.N.Y. 1995).................................................................................15

*Brillhart v. Excess Ins. Co. of Am.*,
   316 U.S. 491 (1942).........................................................................................................20

*Byrne v. Wood, Herron & Evans, LLP*,
   676 F.3d 1024 (Fed. Cir. 2012) ........................................................................................7

*CBS Outdoor LLC v. Cal. Mini Storage, LLC*,
   No. C 14-01598 SI, 2014 WL 3784266 (N.D. Cal. July 31, 2014) ...............................2

*Cellco P'ship v. Broadcom Corp.*,
   227 F. App'x 889 (Fed. Cir. 2007) ................................................................................21

*Cohn v. Petsmart, Inc.*,
   281 F.3d 837 (9th Cir. 2002)...........................................................................................3

*Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Ass'n*,
   13 Cal. App. 5th 757 (2017)...........................................................................................16

*EMC Corp. v. Chevedden*,
   4 F. Supp. 3d 330 (D. Mass. 2014) ...............................................................................11

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*,
   604 F.3d 983 (7th Cir. 2010)..........................................................................................20

*Feldman v. 1100 Park Lane Associates*,
   160 Cal. App. 4th 1467 (2008)......................................................................................17

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
   527 U.S. 627 (1999).........................................................................................................7

*In re Ford Motor Co./Citibank (S.D.), N.A.*,
    264 F.3d 952 (9th Cir. 2001)..........................................................................................5

*Franklin v. Mass.*,
    505 U.S. 788 (1992) (plurality opinion) ..........................................................9, 11

*Golden Eagle Ins. Co. v. Travelers Cos.*,
    103 F.3d 750 (9th Cir. 1996), *overruled on other grounds,*
    *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998)................................20

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005).................................................................................................7

*Gunn v. Minton*,
    133 S. Ct. 1059 (2013)..........................................................................................6, 7

*Hartstein v. Rembrandt IP Sols., LLC*,
    No. 12-2270 SC, 2012 WL 3075084 (N.D. Cal. July 30, 2012)................................2

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) (superseded on other grounds) ............................................2, 3

*Hurley v. Columbia Cas. Co.*,
    976 F. Supp. 2d 268 (D. Del. 1997).......................................................................20

*Innovus Prime, LLC v. Panasonic Corp.*,
    No. C-12-00660-RMW, 2013 WL 3354390 (N.D. Cal. July 2, 2013) ....................12

*Kaiser Found. Health Plan, Inc. v. Abbot Labs., Inc.*,
    552 F.3d 1033 (9th Cir. 2009)...............................................................................15

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001)...................................................................................5

*Kaneka Corp. v. Xiamen Kingdomway Gr. Co.*,
    No. 11-cv-02389, 2014 WL 12577150 (C.D. Cal. Feb. 24, 2014) ..........................17

*Lateral Link Grp. Co-Op, LLC v. Turley*,
    No. CV 16-01096-BRO, 2016 WL 8839014 (C.D. Cal. Feb. 26, 2016) ....................4

*Leu v. Int'l Boundary Comm'n*,
    Case No. 07-35949, 2008 WL 5009036 (W.D. Wash. Sept. 22, 2008)....................10

*Leu v. Int'l Boundary Comm'n*,
    605 F.3d 693 (9th Cir. 2010)..................................................................................10

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
    No. 15-CV-04718-WHO, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ....................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...........................................................................................8, 10, 12

*Luna v. Kemira Specialty, Inc.,*
    575 F. Supp. 2d 1166 (C.D. Cal. 2008)...........................................................................2

*Mann v. Unum Life Insurance of America*
    505 F. App'x 854 (11th Cir. 2013) .................................................................................5

*Meza v. Meza,*
    No. 12-cv-01777, 2013 WL 2338126 (C.D. Cal. May 25, 2013) .................................17

*Microsoft Corp. v. Motorola, Inc.,*
    696 F.3d 872 (9th Cir. 2012)...........................................................................................1

*Microsoft Corp. v. Motorola, Inc.,*
    795 F.3d 1024 (9th Cir. 2015) ............................................................................. *passim*

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002) ....................................................................................................19

*Nissan N. Am., Inc. v. Andrew Chevrolet, Inc.,*
    589 F. Supp. 2d 1036 (E.D. Wis. 2008).........................................................................20

*Nova Health Sys. v. Gandy,*
    416 F.3d 1149 (10th Cir. 2005)......................................................................................10

*Nw. Requirements Utils. v. F.E.R.C.,*
    798 F.3d 796 (9th Cir. 2015)............................................................................................8

*OG Int'l, Ltd. v. Ubisoft Entm't,*
    No. C 11-04980 CRB, 2012 WL 4809174 (N.D. Cal. Oct. 9, 2012)..................13, 15

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
    151 Cal. App. 4th 688 (2007).........................................................................................18

*Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,*
    283 F. Supp. 2d 1018 (N.D. Iowa 2003)..........................................................................6

*Powertech Tech., Inc. v. Tessera, Inc.,*
    872 F. Supp. 2d 924 (N.D. Cal. 2012) .........................................................15, 16, 19

*Powertech Tech., Inc. v. Tessera, Inc.,*
    660 F.3d 1301 (Fed. Cir. 2011).......................................................................................21

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
    344 U.S. 237 (1952)........................................................................................................20

*Qualcomm, Inc. v. GTE Wireless, Inc.,*
    79 F. Supp. 2d 1177 (S.D. Cal. 1999)............................................................................20

*Realtek Semiconductor Corp. v. LSI Corp.*,
  946 F. Supp. 2d 998 (N.D. Cal. 2013) ..........................................................................1, 7, 18, 21

*Renee v. Duncan*,
  623 F.3d 787 (9th Cir. 2010)............................................................................................................8

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993) .................................................................................................................17

*Silberg v. Anderson*,
  50 Cal. 3d 205 (1990) ..................................................................................................................17

*Spear Pharm., Inc. v. William Blair & Co., LLC*,
  610 F. Supp. 2d 278 (D. Del. 2009)...............................................................................................13

*SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*,
  718 F.2d 365 (Fed. Cir. 1983) ......................................................................................................10

*Swanson Grp. Mfg., LLC v. Jewell*,
  790 F.3d 235 (D.C. Cir. 2005) ......................................................................................................10

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
  No. C 05-4063 CW, 2007 WL 3232441 (N.D. Cal. Nov. 1, 2007) .........................................14

*Tessera, Inc. v. United Test & Assembly Ctr.*,
  Case No. RG08410327 (Cal. Sup. Ct. 2009) ...........................................................................16, 18

*Texas Instruments, Inc. v. Tessera, Inc.*,
  231 F.3d 1325 (Fed. Cir. 2000).......................................................................................... *passim*

*U.S.v. City of Loveland, Ohio*,
  621 F.3d 465 (6th Cir. 2010)........................................................................................................6, 7

*Utah v. Evans*,
  536 U.S. 452 (2002)..................................................................................................................9, 11

*Varadarajan v. U.S. Cricket Ass'n, Inc.*,
  No. 12-CV-01306-LHK, 2012 WL 1252783 (N.D. Cal. Apr. 13, 2012)....................................4

*WBI, Inc. v. Zurich Am. Ins. Co.*,
  No. 16-cv-4852, 2016 WL 4528956 (C.D. Cal. Aug. 30, 2016)............................................4, 5

*Wentland v. Wass*,
  126 Cal. App. 4th 1484 (2005)......................................................................................................17

*Westlands Water Dist., Distrib. Dist. 1 v. Natural Res. Defense Council*,
  276 F. Supp. 2d 1046 (E.D. Cal. 2003)....................................................................................15, 16

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995).................................................................................................................19, 20

**Statutes, Rules and Regulations**

19 U.S.C. § 337(k) ...........................................................................................9

28 U.S.C.
    § 1331.............................................................................................5, 7
    § 1332(a) ............................................................................................2
    § 1338(a) .........................................................................................5, 7
    § 2201 (Declaratory Judgment Act).................................................21

19 C.F.R. § 210.76 ..........................................................................................9

Cal. Civ. Code § 47(b) ...................................................................................16

Cal. Civ. Proc. Code § 425.16(b)(1) ..............................................................18

**Other Authorities**

*Certain Composite Wear Components & Welding Prod. Containing Same,*
    Inv. No. 337-TA-644, USITC Pub. 4251 (Feb. 10, 2011) .......................10

*Certain Optical Disk Controller Chips & Chipsets & Prod. Containing Same,*
    *Including DVD Players & PC Optical Storage Devices,*
    Inv. No. 337-TA-506, USITC Pub. 3935 (Sept. 28, 2005) ................................11, 11

## I.   INTRODUCTION

Contrary to Tessera's assertions, the relief sought by TSMC is not unprecedented. Tessera knew this, but withheld the fact that Tessera itself previously sued another party in the ITC in breach of a contract, which resulted in the Federal Circuit reversing the lower court's denial of a preliminary injunction against Tessera. *See Texas Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000).  Moreover, the injunction that TSMC seeks here is the same type of relief that has previously been granted to protect a third-party beneficiary of a contract from improper assertions of a standard-essential patent in the ITC. *See Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998 (N.D. Cal. 2013).  In *Realtek*, Judge Whyte relied on the Ninth Circuit's affirmance of an anti-suit injunction in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012), and reasoned:  "Defendants' conduct in this case (bringing the ITC action before offering a license) is even more glaringly inconsistent with its RAND obligations than Motorola's request for an injunction …." *Realtek*, 946 F. Supp. 2d at 1006.

Tessera ignores all these precedents, which make clear that TSMC has legitimate claims for protection under the covenant not to sue (the "Covenant") in the Master Technology Usage Agreement ("MTUA") with regard to any claims related to sales to Broadcom.  Tessera's conduct in this case—bringing an ITC case on a patent after its predecessor, Cypress Semiconductor Corp. ("Cypress"), covenanted not to sue TSMC, which by operation of law immunizes from suit the TSMC-made wafers in the accused Broadcom products—is comparable to the improper conduct in all of the above cases.  For these reasons, and as discussed in detail below, Tessera's arguments for dismissal have no merit, and the Court should deny Tessera's motion.

In light of the Covenant, Tessera's attempt to characterize TSMC's suit as a gag order is also without merit.  A covenant to refrain from suit is a bargained-for provision of a contract, not a gag order.  It is, in fact, Tessera who aims to silence TSMC before this Court, stifling TSMC's ability to seek redress for the disregard of its contract rights.  Tessera does so by contorting the *Noerr-Pennington* doctrine, California's litigation privilege, and the anti-SLAPP statute.  Ninth Circuit and California law, however, do not permit these doctrines to bar TSMC's own access to

the judicial process to enforce a covenant not to sue.  Where, as here, petitioning rights have previously been waived through contract, TSMC is entitled to seek relief and vindicate its bargained-for contract rights before the Court.  Tessera cites no case that authorizes a court to dismiss a case where a party is trying to enforce the effect of a covenant not to sue on a patentee.

Accordingly, as discussed in detail below, Tessera's motion should be denied.

## II.     LEGAL ANALYSIS.

### A.     TSMC Has Established Multiple Independent Bases For Subject-Matter Jurisdiction.

#### 1.     Diversity Jurisdiction Is Proper.

Tessera's argument that diversity jurisdiction is lacking should be rejected out of hand. District courts may exercise diversity jurisdiction where there is complete diversity of citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Tessera does not contest diversity of citizenship; instead, Tessera only contests the second requirement.  *See* Tessera's Mot. to Dismiss ("MTD"), ECF No. 41, at 12–13.  But Tessera itself has asked this Court to set an injunction bond of ***over half a billion dollars***.  It cannot plausibly claim that the amount in controversy fails to exceed the jurisdictional threshold of $75,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (superseded on other grounds).  "To justify dismissal for lack of subject matter jurisdiction, it must appear ***to a legal certainty*** that the claim is really for less than the jurisdictional amount."  *CBS Outdoor LLC v. Cal. Mini Storage, LLC*, No. C 14-01598 SI, 2014 WL 3784266, at *3–4 (N.D. Cal. July 31, 2014) (emphasis added) (denying motion to dismiss because "the Court cannot say to a legal certainty that the loss to defendants due to the Court's granting the requested injunction would not be in excess of $75,000").[1]

---

[1] *See also Hartstein v. Rembrandt IP Sols., LLC*, No. 12-2270 SC, 2012 WL 3075084, at *3–4 (N.D. Cal. July 30, 2012) ("The value of an injunction may not be capable of precise determination, but ***precision is not required***.") (emphasis added; internal citation omitted); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (same).

Here, the object of the litigation is the contractual right to legally supply products to Broadcom.  TSMC has alleged that this right is worth millions of dollars—far exceeding the threshold needed to establish diversity jurisdiction.  TSMC has alleged (*and* presented evidence) that it receives more than ▮▮▮▮ of annual revenue from Broadcom alone for its manufacturing services and stands to lose over ▮▮▮▮ annually in business with Broadcom if an Exclusion Order goes into effect.  *See* TSMC's Mot. for Preliminary Injunction ("PI Mot."), ECF No. 7-5, at 2-3, 12-13, 22; *see also* Kuo Decl. (ECF No. 7-22) ¶¶12-13; Compl. (ECF No. 6-5) ¶¶ 46-53.[2]  Moreover, an appeal of such an Exclusion Order would not avoid these injuries because TSMC would lose millions dollars in business with Broadcom while such an appeal is pending if no stay is granted.  *See* PI Mot. at 2-3.

Tessera urges the Court to ignore these facts and find diversity jurisdiction lacking on the purported basis that the supposed "object" of this litigation is actually "a declaratory judgment that would impose restrictions on Tessera's speech in the ITC Proceeding."  (MTD at 13 (arguing that "[t]here is no 'amount' that is directly at issue with such a declaration" because "the declaration TSMC seeks would [not] directly produce any monetary effects.").)  This argument fails at the outset, however, because Tessera has mischaracterized the "object" of this litigation. In defining the "object" of a legal proceeding, courts look to the ***right*** that the party seeks to protect—not the precise means through which it seeks to vindicate that right.  *See, e.g., Hunt*, 432 U.S. at 347 ("object" of litigation challenging the constitutionality of a North Carolina statute was the "right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839–40 (9th Cir. 2002) ("The undisputed evidence shows that Cohn values his trademark rights—the object of the litigation—as worth more than $100,000.").  Here, the right that TSMC seeks to protect (the "object" of the litigation) is its right to continue legally selling TSMC-manufactured wafers to Broadcom that otherwise would be subject to an Exclusion

---

[2] Moreover, as explained in TSMC's motion for preliminary injunction, TSMC is very unlikely to be able to recoup such huge losses from Tessera, even if the appeal were to be successful.  (PI Mot. at 3, 22; *see also* Londen PI Mot. Decl., Exs. 18-20 (ECF Nos. 9-18 to 9-20).)

1    Order in the ITC action.  Declaratory relief is just one of the remedies (along with an injunction)

2    through which TSMC seeks to safeguard that right.

3          The Court should likewise reject Tessera's meritless suggestion that the monetary effects

4    flowing from this action are unduly speculative or "collateral."  *See* MTD at 13.  The opposite is

5    true, as Tessera has itself demonstrated by requesting a $566,565,000 injunction bond, based (in

6    part) on Broadcom's sales of TSMC products.  PI Opp. at 25 ("Tessera accepts this [$80 million]

7    figure for a portion of the injunction bond.").  In any event, given TSMC's unrefuted allegations,

8    supported by affirmative evidence that it stands to lose more than ▇▇▇▇▇▇▇▇ as a result of an

9    Exclusion Order, the Court cannot say with any certainty, much less "legal certainty," that

10   TSMC's claim to enjoin Tessera from enforcing such an order is worth $75,000 or less.  *See*

11   *Varadarajan v. U.S. Cricket Ass'n, Inc.*, No. 12-CV-01306-LHK, 2012 WL 1252783, at *9 (N.D.

12   Cal. Apr. 13, 2012) ("The Court declines to dismiss the case at this point because it does not

13   appear 'to a legal certainty that the [injunction] claim is really for less than the jurisdictional

14   amount.") (citation omitted); *Lateral Link Grp. Co-Op, LLC v. Turley*, No. CV 16-01096-BRO

15   (GJSx), 2016 WL 8839014, at *4 (C.D. Cal. Feb. 26, 2016) ("Defendants [have not] established

16   with any legal certainty that the injunction would be worth less than $75,000, as they must.").

17         Tessera's cases are not to the contrary.  In *Anderson Plant LLC v. Batzer Construction,*

18   *Inc.*, for instance, the district court remanded a petition to vacate "a *zero-dollar* arbitration award,

19   the potential vacatur of which does not satisfy the amount-in-controversy requirement."  No. 15-

20   cv-01966, 2015 WL 4572294, at *6 (N.D. Cal. July 29, 2015) (emphasis added).  Although the

21   court declined in that case to consider the potential effects of vacating the zero-dollar award on a

22   *separate*, unrelated Superior Court action (*id.* at *7), that decision has no bearing here because the

23   losses TSMC seeks to avoid will directly flow from an Exclusion Order in the ITC action.

24         Similarly, in *WBI, Inc. v. Zurich America Insurance Co.*, No. 16-cv-4852, 2016 WL

25   4528956 (C.D. Cal. Aug. 30, 2016), the plaintiff filed a federal court action to vacate the

26   disqualification of an arbitrator.  The court rejected as unduly speculative the plaintiff's assertion

27   that reinstating the original arbitrator would have a "material impact" on the underlying

28

1   arbitration so as to satisfy the "amount in controversy" requirement. *Id.* at \*2-3.[3] But such

2   reasoning does not support dismissing *this* case because TSMC's claims for relief are specifically

3   directed to the merits of the underlying ITC decision—and the losses that TSMC will sustain as a

4   result of that incorrect decision are neither disputed by Tessera nor speculative in the least.

5   Moreover, as explained below in Section II.B.1 with respect to redressability, the relief that

6   TSMC seeks in this action (if granted) will prevent those losses.

7          In sum, the amount in controversy in this action is multitudes higher than $75,000, and

8   this case falls squarely within this Court's diversity jurisdiction.

9                    **2.    TSMC Has Also Established Federal Question And Patent Law
                            Jurisdiction.**

10

11         Tessera is also wrong that this Court lacks subject matter jurisdiction under 28 U.S.C.

12   § 1331 (federal question) and § 1338(a) (patent law).  For purposes of both sections, even where

13   federal law does not create the cause of action, a state law claim may nevertheless provide the

14   basis for federal subject matter jurisdiction where "a federal issue is '(1) necessarily raised,

15   (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

16   disrupting the federal-state balance approved by Congress.'" *Levi Strauss & Co. v. Aqua*

17   *Dynamics Sys., Inc.*, No. 15-CV-04718-WHO, 2016 WL 1365946, at \*5 (N.D. Cal. Apr. 6, 2016)

18   (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013)).[4]  Here, each of these requirements is

19           [3] Tessera's other cases are also inapposite.  In *Mann v. Unum Life Insurance of America*,

20   for instance, the court held that an insurance company's potential "future loss of revenue from
     yet-to-be renewed policies" did not satisfy the "amount-in-controversy" requirement in a class

21   action case, noting that the insurer's argument was "filled to the brim with assumptions about
     policyholder behavior and Florida insurance rates." 505 F. App'x 854, 856-57 (11th Cir. 2013).

22   Here, in contrast, the value of TSMC's claim for injunctive relief does not rely on any such
     speculation.  Tessera's reliance on *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001),

23   and *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952 (9th Cir. 2001), is also
     misguided because those cases deal with irrelevant issues relating to the aggregation of claims

24   and costs in a class action.  *See Kanter*, 265 F.3d at 860 (claims of individual class members
     cannot be aggregated); *In re Ford Motor Co.*, 264 F.3d at 958-63 (cost to comply with an

25   injunction cannot be aggregated across multiple class members).  They do not support Tessera's
     arguments in this case.

26           [4] Tessera asserts, relying on inapposite authority, that TSMC's declaratory judgment

27   action does not create an independent basis for federal jurisdiction.  *See* MTD at 12.  But TSMC
     does not so contend.  Rather, federal subject-matter jurisdiction is proper here because TSMC's

28   claims necessarily raise substantial, disputed issues of federal law that a federal court should
     properly resolve.  The Court should likewise disregard Tessera's strawman argument, supported

1    satisfied.

2           The first *Gunn* requirement is met here because TSMC seeks a declaration and an

3    injunction that "necessarily raises" principles of exhaustion under federal patent law, and requires

4    the Court to apply those principles to interpret the contractual provision at issue.  TSMC has

5    asked the Court for a declaration that TSMC's sales of relevant TSMC-manufactured wafers to

6    Broadcom "are not excluded from the coverage of the Covenant." (Compl., Prayer for Relief.)

7    TSMC has also asked the Court to declare that "Tessera exceeded its rights with regard to the

8    '946 Patent by opposing Broadcom's exhaustion defense in the ITC Proceeding based on the

9    contention that the Covenant does not cover sales of wafers by TSMC to Broadcom." (*Id.*; *see*

10   *also* PI Mot. at 15-19.) Thus, to properly interpret the Covenant, and determine whether TSMC is

11   entitled to the relief it seeks, the Court must necessarily address the issue of exhaustion governed

12   by federal patent law.  In particular, the Court must determine whether the Covenant gives rise to

13   an exhaustion defense.  *See* PI Mot. at 19 (discussing federal authority).

14          The second *Gunn* requirement is likewise met because it is without question that the key

15   federal issue here is "actually disputed."  Indeed, although Tessera has asserted (without

16   explanation) that this case merely involves interpretation of a contract under state law principles

17   (*see* MTD at 11-12), that bald contention is directly contradicted by Tessera's own repeated

18   reliance on federal patent exhaustion law in opposing TSMC's motion for preliminary injunction.

19   *See, e.g.*, PI Opp. at 13, 16 (discussing, *e.g.*, *TransCore, LP v. Elec. Transaction Consultants*

20   *Corp.*, 563 F.3d 1271 (Fed. Cir. 2009) and *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S.

21   Ct. 1523 (2017)).

22          The third *Gunn* requirement is also satisfied here because the federal issue is

23   "substantial."  *See Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 283 F. Supp. 2d 1018,

24   1029 (N.D. Iowa 2003) (noting that "patent exhaustion" defense raised "substantial question[s] of

25   federal patent law") (internal quotation omitted).  Not only is the federal issue substantial in this

26

27   by irrelevant case law, that TSMC seeks to rely on Broadcom's patent law defense as a basis for
     subject-matter jurisdiction here.  (*Id.*) TSMC has not asserted a patent law defense in this action,

28   nor does it contend that Broadcom's exhaustion defense in the ITC provides an independent basis
     for jurisdiction in this Court.

case, it is dispositive.  Moreover, the injunction that TSMC seeks should properly be issued by a federal court because it would affect conduct before a federal agency (the ITC).  *See, e.g., U.S.v. City of Loveland, Ohio*, 621 F.3d 465, 472–73 (6th Cir. 2010) (finding that declaratory judgment action presented substantial federal question where a federal agency negotiated the relevant consent decree).  The "strong federal interest in patent law uniformity" also shows that the exhaustion issues presented here are "substantial."  *Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1025 (Fed. Cir. 2012); *see also Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644-45 (1999) ("The need for uniformity in the construction of patent law is undoubtedly important.").  Indeed, denying federal jurisdiction over cases such as this would frustrate the need for uniformity by allowing "different states to reach different conclusions" as to the application of exhaustion principles against patent claims asserted in violation of contractual terms.  *Byrne*, 676 F.3d at 1026-27.

Finally, the fourth *Gunn* requirement is met because deciding this case in a federal forum carries no risk of "disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  To the contrary, federal district courts already have exclusive jurisdiction over patent infringement actions.  *See Byrne*, 676 F.3d at 1025.  And providing a federal forum for declaratory judgment actions such as this will not "open the floodgates of litigation that might overwhelm the federal courts."  *See City of Loveland, Ohio*, 621 F.3d at 472–73.

In sum, the patent issues in this case are more than sufficient to support subject matter jurisdiction under sections 1331 and 1338.

**B.     TSMC Has Standing.**

Tessera's standing argument—that judicial relief would not matter because it would not directly reverse the ITC's own decision—also fails.  This issue never arose in *Texas Instruments, Realtek*, and other cases dealing with similar injunctive relief.  None of these cases mentions this as a pitfall.  Indeed, some expressly note that they "will not and cannot enjoin the ITC action."  *Texas Instruments*, 231 F.3d at 1332; *see also Realtek*, 946 F. Supp. 2d at 1009 n.6 (holding that a preliminary injunction "will only go into effect in the event that the ITC grants an exclusion order

1   or injunctive relief in favor of defendants" and noting that "[t]he ITC may, of course, still analyze

2   Realtek's claims and defenses independently."). If Tessera's purported standing problem existed,

3   someone would have pointed it out already. Indeed, Tessera itself would have raised the issue in

4   *Texas Instruments*, where it was the defendant.

5        Article III standing consists of "three elements": (1) an injury that (2) is causally

6   connected to the defendant's action and (3) will likely be redressed by a favorable decision.

7   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Tessera does not dispute that an

8   Exclusion Order based on a misinterpretation of the Covenant will cause injury—an invasion of a

9   legally protected interest which is concrete and particularized, and actual or imminent, not

10  conjectural or hypothetical. *Id.* Instead, Tessera focuses on redressability and causation,

11  claiming neither exists because "it is the ALJ and the ITC that are supposedly harming TSMC,"

12  not Tessera. (MTD at 8 (emphasis omitted); *see also id.* at 9.) But this formalism cannot hide the

13  reality that (1) the ITC will defer to this Court's interpretation of the Covenant and (2) TSMC will

14  suffer great and irreparable harm if Tessera continues to push its mistaken interpretation of the

15  Covenant in the ITC.

16                    **1.    TSMC Has Established Redressability.**

17        Redressability is a "relatively modest" requirement, *Renee v. Duncan*, 623 F.3d 787, 797

18  (9th Cir. 2010), that examines "whether and how the requested relief would help," *Animal Legal*

19  *Def. Fund v. Veneman*, 469 F.3d 826, 835 (9th Cir. 2006). "Redressability does not require

20  certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial

21  decision." *Nw. Requirements Utils. v. F.E.R.C.*, 798 F.3d 796, 806 (9th Cir. 2015) (citation

22  omitted). That standard is met here. Barring Tessera from pushing its misreading of the

23  Covenant and/or opposing a stay motion in the ITC will prevent enforcement of an Exclusion

24  Order.

25        As an initial matter, Tessera mischaracterizes the Complaint. Tessera's motion proceeds

26  as if the Complaint only seeks the relief sought in TSMC's Preliminary Injunction motion. As

27  TSMC's "Prayer for Relief" states, however, TSMC is fundamentally seeking declarations about

28  its contract rights, including: "a. A declaration that the meaning of 'claims of infringement [that]

arise from TSMC manufacturing services, design tools or IP libraries created or developed by or

for TSMC' does not exclude claims based on sales or delivery and transfer of title by TSMC to

Broadcom of products TSMC manufactures for Broadcom." *See* Compl. at 16-17 ("Prayer for

Relief"); *see also id.* ("b. A declaration that sales or delivery and transfer of title by TSMC to

Broadcom of products that TSMC manufactures based on Broadcom's designs are not excluded

from the coverage of the Covenant."). Tessera gives no reason why declaratory relief as to the

meaning of the contract fails the redressability test. For that reason alone, Tessera's argument

fails.

Even taking Tessera's motion on its own terms—*i.e.*, by focusing on the relief TSMC

seeks with respect to the ITC proceedings—the redressability requirement is met. While Tessera

notes that ITC proceedings can "go forward automatically" (MTD at 9), it never claims that the

ITC would ignore this Court's rulings. For that reason alone, we may presume the ITC will honor

them. *See Franklin v. Mass.*, 505 U.S. 788, 803 (1992) (plurality opinion) ("[W]e may assume it

is substantially likely that the President and other executive and congressional officials would

abide by an authoritative interpretation of the census statute and constitutional provision by the

District Court, even though they would not be directly bound by such a determination.").

Even if this presumption left room for doubt, the ITC's actual practice dispels it. *Utah v.

Evans*, 536 U.S. 452, 460-61 (2002) (redressability established where plaintiffs "reasonably

believed" that relief sought would "as a practical matter" remedy alleged injury). The ITC will

rescind an exclusion order if it finds "that the conditions which led to such exclusion from entry

or order no longer exist." 19 U.S.C. § 337(k)(1).[5] Tessera offers no evidence that if confronted

with a court order with a contrary interpretation of the Covenant and a motion to stay any

Exclusion Order pending appeal—which Tessera would be enjoined from opposing—the ITC

would nonetheless proceed with excluding products. To the contrary, the ITC has long treated a

court ruling that conflicts with an Exclusion Order as a change in conditions that warrants

---

[5] *See also id.* § 337(k)(2) (permitting party to seek modification or rescission of order on the basis of new evidence or grounds that would permit relief under Federal Rules of Civil Procedure); 19 C.F.R. § 210.76 (establishing procedure for seeking modification or rescission).

1    changing the Exclusion Order. *E.g.*, *Certain Composite Wear Components & Welding Prod.*

2    *Containing Same*, Inv. No. 337-TA-644, USITC Pub. 4251 (Feb. 10, 2011) at 9 (district court

3    finding of patent invalidity "substantially changed the circumstances under which [remedial]

4    orders were issued" and justified rescission "pending resolution of the appeal at the Federal

5    Circuit") (Londen Decl., filed herewith, Ex. 1); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718

6    F.2d 365, 370 (Fed. Cir. 1983) (affirming similar decision to suspend exclusion order during

7    presidential review period).

8          Tessera's standing cases are not to the contrary. Two cases—*Swanson Group*

9    *Manufacturing, LLC v. Jewell*, 790 F.3d 235 (D.C. Cir. 2005), and *Nova Health Systems v.*

10    *Gandy*, 416 F.3d 1149 (10th Cir. 2005)—have nothing to do with this case apart from reciting

11    general standing principles. In *Swanson Group Manufacturing*, the plaintiffs tried to compel the

12    Interior Department to sell more timber from federally-administered land on the theory that the

13    timber supply affected their businesses, but their only evidence was "speculative with respect to

14    the claimed threat to the plaintiffs' interests and conclusory or silent with respect to their claims

15    of causation and redressability." 790 F.3d at 242. In *Nova Health Systems*, by contrast, the

16    plaintiffs sued officials to enjoin enforcement of a state law, but the court construed that law as a

17    tort statute that merely authorized a right of action. Once the court accepted the view that the

18    officials did not enforce the law, the futility of an injunction was patent: there "would still be a

19    multitude of other prospective litigants who could potentially sue . . . under that act." 416 F.3d at

20    1159. Neither situation is comparable to this case.

21          Tessera also misses the mark with *Leu v. International Boundary Commission*, 605 F.3d

22    693 (9th Cir. 2010), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In those cases, the

23    government itself argued there was no redressability because non-party agencies and officials

24    would not be bound by the judgment. *Leu*, 605 F.3d at 693–94; *see* Br. of Defs.-Appellees, *Leu v.*

25    *Int'l Boundary Comm'n*, Case No. 07-35949, 2008 WL 5009036, at \*17 (W.D. Wash. Sept. 22,

26    2008); *Lujan*, 504 U.S. at 568–70. It thus was obvious that the non-party officials and agencies

27    would not abide by the court's declaration—otherwise, the government would never have made

28    the argument in the first place more simply. Here, by contrast, no one—not even Tessera—

1    claims the ITC will flat-out ignore this Court's ruling, and the ITC's past practice shows that it

2    will in fact follow that ruling.

3           Neither is Tessera's reliance on *EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330 (D. Mass.

4    2014), persuasive.  Tessera relies on that case's alternative holding, which is dicta and cannot be

5    squared with the Supreme Court's practical approach to evaluating redressability.  *See id.* at 337-

6    39; *see also, e.g.*, *Utah*, 536 U.S. at 461 and *Franklin*, 505 U.S. at 824-25.  Even *EMC*

7    acknowledged that the Fifth Circuit had reached the opposite conclusion on the same issue.

8    *EMC*, 4 F. Supp. 3d at 337 (citing *Waste Connections, Inc. v. Chevedden*, No. 13-20336, 2014

9    WL 554566 (5th Cir. Feb. 13, 2014) and *KBR v. Chevedden*, 478 F. App'x 213 (5th Cir. 2012)).

10          Tessera's argument on the facts—that the ITC will do what it wants "regardless of what

11   this Court rules"—fares no better.  (MTD at 9.)  As its sole support, Tessera claims that the ITC

12   once "include[d] [an] infringing chip in [an] exclusion order even though '[the] complainants

13   withdrew their infringement allegations as to that chip.'"  (*Id.*)  Not so.  In that case, "neither the

14   ALJ nor the Commission . . . made any infringement determination" as to the withdrawn chip.

15   *Certain Optical Disk Controller Chips & Chipsets & Prod. Containing Same, Including DVD*

16   *Players & PC Optical Storage Devices*, Inv. No. 337-TA-506, USITC Pub. 3935 (Sept. 28, 2005)

17   at 56 (emphasis added) (Londen Decl. Ex. 2).  Nor did the ITC "include" that chip in an

18   Exclusion Order.  Rather, the ITC followed its "long-standing practice" of "direct[ing] its

19   remedial orders to all products covered by the patent claims as to which a violation has been

20   found" and "avoid[ing] using model numbers in its exclusion orders because such model numbers

21   can be changed, and the exclusion order circumvented."  *Id.* at 57.  This commonsense approach

22   to crafting a remedy does not mean the ITC will try to enforce a non-existent patent right.

23          Tessera, thus, should not be heard to allege that any relief TSMC may receive is

24   speculative by itself speculating that the ITC might ignore the Court's rulings.  The law presumes

25   otherwise, and the ITC's past practice confirms that presumption.  TSMC has established

26   redressability.

27

28

1

## 2. **TSMC Has Established Causation.**

2      For similar reasons, TSMC has established a causal connection between Tessera's conduct

3 and the injury it faces.  "Causal connection and redressability are two sides of the same coin."

4 *Animal Legal Def. Fund*, 469 F.3d at 835.  While redressability is focused on whether and how

5 the sought relief would help, causation looks to "the relationship between the defendant's conduct

6 and the alleged injury."  *Id.*

7      The threatened harm here is not the product of "unfettered choices made by independent

8 actors not before the courts and whose exercise of broad and legitimate discretion the courts

9 cannot presume either to control or predict."  *Lujan*, 504 U.S. at 562 (citation omitted).  The ALJ

10 adopted the erroneous reading of TSMC's contract rights under the Covenant solely because

11 Tessera pushed it.  If Tessera is enjoined from opposing a request to stay enforcement pending

12 appeal, it stretches credibility to assert that that order would have no effect on whether a stay

13 would issue.

14   **C.    TSMC Brought Suit To Confirm The Effect Of Its Contract Rights,
        Not To Punish Protected Speech.**

15

16      Tessera's attempt to recast TSMC's action as punishing protected speech is without merit.

17 TSMC brought this action to confirm its customer Broadcom is protected by the doctrine of

18 patent exhaustion pursuant to TSMC's contractual rights.  Therefore, the *Noerr-Pennington*

19 doctrine, the California litigation privilege, and the anti-SLAPP statute are inapplicable.

20   **1.    *Noerr-Pennington* Does Not Apply To TSMC's Action.**

21      TSMC's suit to protect its rights under the Covenant cannot violate *Noerr-Pennington*.

22 Tessera's right to assert the '946 patent was restricted by the terms of the Covenant because

23 Cypress could not transfer more rights than it had.  *See Innovus Prime, LLC v. Panasonic Corp.*,

24 No. C-12-00660-RMW, 2013 WL 3354390, at *5 (N.D. Cal. July 2, 2013) ("It is a longstanding

25 principle that an assignee of a patent takes the patent subject to prior licenses.").  As Tessera's

26 opposition confirms, there is no authority for applying *Noerr-Pennington* to bar TSMC from

27 enforcing a covenant not to sue through a later filed district court action.  To the contrary, under

28 Ninth Circuit case law, the *Noerr-Pennington* doctrine does not apply here.

1

### a.   Under Ninth Circuit Law, *Noerr-Pennington* Cannot Apply Where Petitioning Rights Were Previously Waived By Contract.

2

3        Tessera fundamentally mischaracterizes the *Noerr-Pennington* doctrine.  The doctrine is

4    derived from the Petition Clause of the First Amendment and "protects 'the right of the people . . .

5    to petition the Government for a redress of grievances' by providing immunity from liability *for*

6    *petitioning conduct*."  *OG Int'l, Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2012 WL

7    4809174, at *2 (N.D. Cal. Oct. 9, 2012) (quoting *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th

8    Cir. 2006)) (emphasis added).  "Because the *Noerr–Pennington* doctrine grows out of the Petition

9    Clause, its reach extends only so far as necessary to steer . . . clear of violating the First

10   Amendment."  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1048 (9th Cir. 2015) (citation

11   omitted).  In the Ninth Circuit, "[e]nforcing a contractual commitment to refrain from litigation

12   does not violate the First Amendment; if it did, every settlement of a lawsuit would be

13   unenforceable as a *Noerr–Pennington* violation."  *Id.*  More fundamentally, "[t]he doctrine does

14   not . . . immunize a party from actions that amount to a breach of contract."  *Id.* at 1047 (citing

15   *Spear Pharm., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009)).[6]  "A

16   number of courts have so held, and at least one emphasized that *Noerr–Pennington* does not

17   protect patent holders from liability for asserting rights in violation of a commitment not to

18   enforce those rights."  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d at 1047-48 (citing *Powertech*

19   *Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 931 (N.D. Cal. 2012)).

20       In *Microsoft*, the Ninth Circuit confirmed breach of contract actions are not barred by

21   *Noerr-Pennington*.  Though patentee Motorola sent infringement letters and eventually brought

22   an infringement suit against Microsoft, it had previously entered a contract requiring that it

23   license the patents-in-suit to Microsoft on reasonable and non-discriminatory ("RAND") terms.

24
25       [6] As *Spear Pharmaceuticals* explains, courts reject attempts to "merely repackage . . .
     lawful attempts to influence government" through suit using "claims for . . . tortious interference
     with prospective business advantage, abuse of process, and violation of antitrust laws."  610 F.
26   Supp. 2d at 288.  But *Noerr-Pennington* was inapplicable in *Spear Pharmaceuticals* because
     "Plaintiffs state bona fide claims for trade secret misappropriation, breach of contract, and unjust
27   enrichment."  *Id.* ("Plaintiffs' Complaint supports these claims with facts pertaining to the
     contract that was breached, the information that constituted a trade secret, and how Valeant
28   benefitted through misappropriation . . . .").

1     Microsoft therefore brought an action in district court seeking to hold Motorola to that obligation.

2     Rejecting Motorola's argument that *Noerr-Pennington* barred Microsoft's action, the Ninth

3     Circuit relied on the district court's reasoning in *Apple v. Motorola*:

> Although the First Amendment protects Motorola's right to petition the courts to
> enforce its patents, Apple's breach of contract claims are based on the theory that
> Motorola agreed by contract that it would not enforce its patent rights until it
> offered a license to Apple on fair, reasonable and nondiscriminatory terms. In
> other words, Apple contends that Motorola ***waived some of its petitioning rights***
> through contract. It would be improper to use the *Noerr–Pennington* doctrine to
> bar Apple from enforcing that contract.

8     *Microsoft v. Motorola, Inc.*, 795 F.3d at 1048 (quoting *Apple, Inc. v. Motorola Mobility, Inc.*, 886

9     F. Supp. 2d 1061, 1078 (W.D. Wis. 2012) (emphasis added)).

10          Here, as in *Microsoft*, the original patentee, Cypress, made a contractual commitment to

11    refrain from suing TSMC at least for claims arising from its ███████████████     This

12    means that Cypress could not sue TSMC for sales to Broadcom of wafers which TSMC

13    manufactured. When Tessera acquired the patent, it acquired rights no broader than what the

14    assignor Cypress possessed. Now, before the ITC, Tessera seeks to enforce a patent right that, by

15    operation of contract and the doctrine of patent exhaustion, it does not possess. As in *Microsoft*

16    and *Apple*, those "petitioning rights were waived by contract." Lest the Covenant be rendered

17    meaningless, Tessera must be enjoined from asserting patent rights it does not have. *See Tessera,*

18    *Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2007 WL 3232441, at *6 (N.D. Cal.

19    Nov. 1, 2007) ("Plaintiff is enjoined from filing a complaint against the ASP Defendants in the

20    ITC, or in any other way seeking relief against them outside of California, accusing of

21    infringement any of the ASP Defendants' products that are arguably covered by a license

22    agreement with Plaintiff."); *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 865 F. Supp. 2, 7

23    (D.D.C. 1994) (granting injunction requiring defendant to withdraw its filing with the FCC and

24    "to file no others" and rejecting *Noerr-Pennington* as precluding such relief because defendant

25    was bound by the terms of its contract "and may be enjoined from breaching it.").

26          At bottom, Tessera cites no authority sanctioning the use of *Noerr-Pennington* to bar a

27    party from enforcing a covenant not to sue on a patent through a district court action. Nor does it

28

1     cite a single case extending the doctrine to an assignee of that patent.  Accordingly, *Noerr-*

2     *Pennington* cannot bar this action.

3             Finally, because *Noerr-Pennington* is inapplicable, the Court need not address the sham

4     litigation exception.  *Microsoft v. Motorola, Inc.*, 795 F.3d at 1047 n.17 ("We do not here

5     determine whether Motorola's infringement suits might properly come within the sham litigation

6     exception, because, as we explain, the *Noerr–Pennington* doctrine does not apply in the first

7     place.").  Therefore, Tessera's discussion of the sham litigation exception is irrelevant.

8                               **b.      Tessera's Cases Confirm That *Noerr-Pennington* Does
                                        Not Apply.**
9

10            Attempts like Tessera's to overstretch *Noerr-Pennington* to contract matters have been

11    rejected in this District before—including litigation in which Tessera itself was a party.  In

12    *Powertech Technology, Inc. v. Tessera*, the Court held that while "the *Noerr–Pennington* doctrine

13    protects 'those who petition the government for redress . . . from antitrust, statutory, or tort

14    liability,' Tessera provides no compelling authority that the doctrine immunizes against breach of

15    contract claims."  *Powertech*, 872 F. Supp. 924, 931 (N.D. Cal. 2012) (quoting *Luxpro Corp.*

16    *v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 1086027, at *3 (N.D. Cal. Mar. 24, 2011)).  As

17    nearly every case that Tessera does cite establishes, *Noerr-Pennington* only applies to such causes

18    of action attempting to impose liability for rightful petitioning activity:

19    • *OG International, Ltd. v. Ubisoft Entertainment*, No. C 11-04980 CRB, 2012 WL
        4809174, at *3 (N.D. Cal. Oct. 9, 2012) (applying doctrine to state law claims of
20      intentional interference, trade libel, and unfair competition claims).

21    • *Kaiser Foundation Health Plan, Inc. v. Abbot Laboratories, Inc.*, 552 F.3d 1033, 1044
        (9th Cir. 2009) (applying *Noerr-Pennington* to antitrust claim under Sherman Act).
22

23    • *Bio-Technology General Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 381–82 (S.D.N.Y.
        1995) (concluding doctrine barred an attempt to mount antitrust claims against party for
24      its petitioning activity before the ITC).

25            Tessera further mischaracterizes *Westlands Water District, Distribution District 1 v.*

26    *Natural Resources Defense Council*, 276 F. Supp. 2d 1046 (E.D. Cal. 2003), which did not

27    concern waiver of petitioning rights through a prior contract.  Rather, the *Noerr-Pennington*

28    analysis in *Westlands* concerned only whether public comments offered by the Natural Resources

1   Defense Council ("NRDC") about a ***proposed*** contract between the U.S Government and a

2   California water distribution district (Westlands) were immune from suit. 276 F. Supp. 2d at

3   1046, 1048; *see also id.* at 1053-54 ("Indeed, the only dispute involved here is Westlands'

4   disagreement with the views expressed in NRDC's public comment letter.").

5       Finally, the Court in *Powertech* distinguished the Superior Court decision on which

6   Tessera relies, *Tessera, Inc. v. United Test & Assembly Center*, Case No. RG08410327 (Cal. Sup.

7   Ct. 2009), finding it unpersuasive. *Powertech*, 872 F. Supp. 2d at 932 ("[T]he Alameda County

8   Superior Court held, without elaboration or discussion, that claims of breach of contract, breach

9   of the covenant of good faith and fair dealing and violation of the [Unfair Competition Law] were

10  barred by the state law litigation privilege and the *Noerr–Pennington* doctrine, without separating

11  the two privileges or the various causes of action."). Furthermore, since the time *Tessera* was

12  decided in 2012, the Ninth Circuit has ruled that the *Noerr-Pennington* doctrine does not bar

13  contract claims. *Microsoft v. Motorola, Inc.*, 795 F.3d at 1048. *Tessera* thus provides no support

14  for Tessera's untenable position.

15      Accordingly, Tessera's arguments under *Noerr-Pennington* are without support and

16  contrary to Ninth Circuit precedent.

17          **2.      The California Litigation Privilege Does Not Bar This Action.**

18      The California litigation privilege protects a litigant from being sued for the statements it

19  makes in the course of litigation. Cal. Civ. Code § 47(b). It has no application here because

20  TSMC is not suing Tessera for making statements to the ITC. Instead, TSMC brought suit

21  against Tessera to enforce a contract consistent with the principles of patent exhaustion.

22      No amount of gloss, attorney argument, or selective quoting from the Complaint by

23  Tessera can change the fact that, fundamentally, this declaratory judgment action is based on a

24  prior agreement—the covenant not to sue in the MTUA.[7] "If one expressly contracts not to

25  engage in certain speech or petition activity and then does so, applying the privilege would

26  frustrate the very purpose of the contract if there was a privilege to breach it." *Crossroads Inv'rs,*

27  _____

28  [7] The 2012 MTUA (Master Technology Usage Agreement) is attached as Exhibit 1 to the
    Complaint. *See* ECF No. 6-7.

1  *L.P. v. Fed. Nat'l Mortg. Ass'n*, 13 Cal. App. 5th 757, 787 (2017) (denying motion to strike

2  claims for breach related to deed of trust defendant entered into because California litigation

3  privilege was inapplicable).

4       Tessera's reliance on *Silberg v. Anderson*, 50 Cal. 3d 205 (Cal. 1990), is misplaced.

5  *Silberg* described the privilege this way:

6           [T]he privilege applies to any communication (1) made in judicial
            or quasijudicial proceedings; (2) by litigants or other participants
7           authorized by law; (3) to achieve the objects of the litigation; and
            (4) that have some connection or logical relation to the action.
8

9  50 Cal. 3d at 212.  This has no application here because TSMC is not seeking to impose liability

10 upon Tessera for any communication, which distinguishes the instant case from *Silberg* and all of

11 the related cases that Tessera cites.[8]

12      Far from seeking to impose liability for a communication, TSMC contends that Tessera's

13 property rights as acquired from Cypress and as limited by the MTUA do not include the right to

14 accuse the Broadcom products with wafers made by TSMC of infringement of that patent.  Like

15 the claims in *Wentland v. Wass*, "[t]his cause of action is not based on allegedly wrongful conduct

16 during litigation."  126 Cal. App. 4th 1484, 1494 (2005).  Rather, it is based on "a separate

17 promise independent of the litigation" under the MTUA.  *Id.*  As in *Wentland*, "[t]he policies

18 behind the litigation privilege are not furthered by its application in this case.  Unlike in the usual

19 derivative tort action, application of the privilege in the instant case does not serve to promote

20 access to the courts, truthful testimony or zealous advocacy."  *Wentland*, 126 Cal. App. 4th at

21 1494.

22

23           [8]  In *Feldman v. 1100 Park Lane Associates* the court found the litigation privilege
     applicable only to "communicative acts."  160 Cal. App. 4th 1467, 1484-85 (2008).  *Rubin v.*
24   *Green* also applied the litigation privilege only to hold "communications 'with some relation' to
     judicial proceedings absolutely immune from [] liability."  4 Cal. 4th 1187, 1203 (1993).  In *Meza*
25   *v. Meza*, the court dismissed a claim by the mother of a detainee who sought damages and other
     relief based on allegations that Orange County Social Services Agency employees had misled a
26   judge.  No. 12-cv-01777, 2013 WL 2338126, at *12–13 (C.D. Cal. May 25, 2013).  In *Kaneka*
     *Corp. v. Xiamen Kingdomway Gr. Co.*, a company accused its competitor of defamation torts and
27   unfair competition because of statements that the competitor's lawyer made in letters to
     customers about pending litigation between the companies.  No. 11-cv-02389, 2014 WL
28   12577150, at *4–5 (C.D. Cal. Feb. 24, 2014).

1    Injunctive relief, as in *Realtek, Microsoft, Texas Instruments*, and other cases, to prevent

2    litigation or administrative proceedings in violation of contractual rights are not constrained by

3    the *Noerr Pennington* doctrine.  Similarly, no case Tessera cites holds or suggests that the

4    litigation privilege constrains the *remedies* available based on a claim that does not itself

5    predicate liability on communicative acts.

6               3.      **Tessera's Special Motion To Strike Under the California Anti-**
                        **SLAPP Statute Should Be Denied.**
7

8    Tessera also argues that this case must be stricken under California Code of Civil

9    Procedure § 425.16, the "Anti-SLAPP Statute."  (MTD at 17-20.)  But that statute expressly does

10   not apply where, as here, "the plaintiff has established that there is a probability that the plaintiff

11   will prevail on the claim."  Cal. Code. Civ. Proc. § 425.16(b)(1).  "[T]he plaintiff's burden of

12   establishing a probability of prevailing is not high: [courts] do not weigh credibility, nor do [they]

13   evaluate the weight of the evidence."  *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.

14   App. 4th 688, 699–700 (2007).  "Instead, [courts] accept as true all evidence favorable to the

15   plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's

16   submission as a matter of law."  *Id*.  "Only a cause of action that lacks 'even minimal merit'

17   constitutes a SLAPP.  *Id.*

18   Here, Tessera does not even attempt to argue that TSMC's showing on the merits of its

19   claims is insufficient to defeat an anti-SLAPP motion—for good reason.[9]  Instead, Tessera's anti-

20   SLAPP motion is predicated entirely upon its misguided arguments with respect to standing, the

21   *Noerr-Pennington* doctrine, the litigation privilege, and *Wilton/Brillhart* abstention.  *See* MTD at

22   14-23  Because each of those arguments is without merit (*see* Sections II.B, II.C.1-2, and II.D),

23   Tessera's anti-SLAPP motion fails as well.

24   Tessera relies on *Tessera, Inc. v. United Test & Assembly Center*, Case No. RG08410327

25   (Cal. Sup. Ct. 2009), stating that "the Alameda County Superior Court granted an anti-SLAPP

26

27   _____
     [9] TSMC refers to and incorporates its showing of probable success in its Motion for
     Preliminary Injunction and its Reply, filed contemporaneously herewith, in support of that
28   motion.  (*See* ECF No. 7-5 at 15-19; Reply at 2-9.)

1   motion to strike on *Noerr-Pennington* grounds under facts nearly identical to the relevant facts

2   here." (MTD at 19.)  That case is not "identical to the relevant facts here." (*Id.*)  Tessera sued

3   UTAC for failing to pay license fees, while prosecuting an ITC case against a UTAC customer.

4   UTAC asserted counterclaims for declaratory relief—which the Superior Court's opinion states

5   Tessera did not challenge.  The declaratory relief claims that Tessera did not challenge requested

6   contractual interpretations to resolve the parties' dispute as to whether Tessera had the right to

7   assert the patent.  (*See* Londen Decl. Ex. 3, ¶¶ 70-96.)  As for the other claims that the court

8   dismissed, Tessera fails to cite *Powertech Technology, Inc. v. Tessera, Inc.*, 872 F. Supp. 2d at

9   932, which rejected a Tessera motion to strike based under the Anti-SLAPP Statute and stated

10  that Tessera's argument based on the Alameda County Superior Court decision was unpersuasive.

11  In a case such as this one, as Judge Wilken noted, the Anti-SLAPP Statute "does not mean that

12  Tessera cannot be sued for breaching the [license] because its alleged breach was related to

13  petitioning activity."  *Powertech Tech.*, 872 F. Supp. 2d at 934 (citing *Navellier v. Sletten*, 29 Cal.

14  4th 82, 93 (2002)).  Indeed, as the California Supreme Court has made clear, the merits prong of

15  the statute "preserves appropriate remedies for breaches of contracts involving speech by

16  ensuring that claims with the requisite minimal merit may proceed."  *Navellier*, 29 Cal. 4th at 94

17  ("[A]s the statute is designed and as we have construed it, a defendant who in fact has validly

18  contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's

19  protection in the event he or she later breaches that contract.").

20          In this case, as in *Powertech*, Tessera's motion to strike based on the Anti-SLAPP Statute

21  should be denied.  Tessera is therefore not entitled to fees for its attempt to improperly derail

22  TSMC's action.

23          **D.      The Court Should Not Abstain From Deciding This Case.**

24          Tessera asks this Court to decline to exercise its authority under the Declaratory Judgment

25  Act to resolve this dispute.  (MTD at 20-21.)[10]  Tessera cites *Wilton v. Seven Falls Co.*, 515 U.S.

26

27          [10] In addition, Tessera suggests in a footnote that, before any exercise of discretion, a
     declaratory judgment claim can be dismissed if there is no other cause of action in the complaint.
     (MTD at 12 n. 3.)  That proposition has long been rejected.  "The Declaratory Judgment Act of
28  1934, now 28 U.S.C. s 2201, 28 U.S.C.A. s 2201, styled 'creation of a remedy,' provides that in a

1   277 (1995), and *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942).  Both

2   cases involved declaratory judgment claims regarding insurance coverage filed by insurers that

3   were also parties to state court actions regarding the same losses.  While *Wilton* recognized that

4   courts have discretion as to declaratory judgment cases, the Court in the following summary of its

5   decision left open whether abstention would be proper in the circumstances of this case:

6           We do not attempt at this time to delineate the outer boundaries of
            that discretion in other cases, for example, cases raising issues of
7           federal law or cases in which there are no parallel state proceedings.
            Like the Court of Appeals, we conclude only that the District Court
8           acted within its bounds in staying this action for declaratory relief
            where parallel proceedings, presenting opportunity for ventilation
9           of the same state law issues, were underway in state court.

10  515 U.S. at 290.

11          This case does raise a federal law issue—patent exhaustion—and there is no parallel state

12  proceeding.  *Wilton* provides no support for declining to decide this case.

13          Nor do the cases Tessera string-cites after *Wilton* and *Brillhart* (MTD at 21) support

14  Tessera's position, and most are easily distinguishable.  Tessera cites three cases in which the

15  federal action raised exactly the same issues as were already pending in another proceeding

16  between ***the same parties***:  *Envision Healthcare, Inc. v. PreferredOne Insurance Co.*, 604 F.3d

17  983, 986–87 (7th Cir. 2010); *Qualcomm, Inc. v. GTE Wireless, Inc.,* 79 F. Supp. 2d 1177, 1179

18  (S.D. Cal. 1999); and *Nissan North America, Inc. v. Andrew Chevrolet, Inc.*, 589 F. Supp. 2d

19  1036, 1041–42 (E.D. Wis. 2008).  Here, of course, the parties in this Court and in the ITC are

20  different.  *Hurley v. Columbia Casualty Co.*, 976 F. Supp. 2d 268, 275–76 (D. Del. 1997), is

21  equally distinguishable: the district court dismissed an insurance coverage declaratory action

22  because a pending bankruptcy proceeding could affect whether a specific exclusion would apply.

23  And the court in *Golden Eagle Insurance Co. v. Travelers Companies,* 103 F.3d 750, 754 (9th

24

---

25  case of actual controversy a competent court may 'declare the rights and other legal relations' of a
    party 'whether or not further relief is or could be sought.'  This is an enabling Act, which confers
26  a discretion on the courts rather than an absolute right upon the litigant."  *Pub. Serv. Comm'n. of
    Utah v. Wycoff Co.*, 344 U.S. 237, 245, (1952).  What is required is a justiciable case or
27  controversy.  Here, TSMC presents a contract that bars Tessera from obtaining a ruling from the
    ITC that Tessera seeks to use against TSMC's customer, Broadcom, in a way that will cause
28  TSMC enormous, irreparable injury.  The case or controversy requirement is plainly met.

1    Cir. 1996), *overruled on other grounds by Government Employees Insurance Co. v. Dizol*, 133

2    F.3d 1220 (9th Cir. 1998), did not even rule that the district court should have dismissed the

3    declaratory judgment claim, only that it should have considered whether to exercise its discretion

4    to decline jurisdiction.

5            Tessera proclaims that *Cellco Partnership v. Broadcom Corp*., 227 F. App'x 889 (Fed.

6    Cir. 2007), involved "circumstances virtually identical to this case." (MTD at 21.) But that is not

7    so.  Cellco was a customer of Qualcomm.  During an ITC proceeding and district court patent

8    infringement case brought by Broadcom against Qualcomm, Cellco brought an action for a

9    declaratory judgment that the patents Broadcom was asserting were invalid.  227 F. App'x at 890.

10   There is no indication that Cellco asserted any contractual protection against having to participate

11   in patent infringement litigation.

12           In this case, by contrast, TSMC seeks to confirm and enforce a contractual covenant that

13   TSMC insisted on receiving from Cypress to protect TSMC from patent infringement litigation.

14   As a matter of federal patent law, this protection extends to TSMC's wafers that it made and sold

15   to its customer Broadcom.  The decision in *Realtek* and the Federal Circuit's decision against

16   Tessera in *Texas Instruments* lead to the ineluctable conclusion that such contractual provisions

17   are properly interpreted through a declaratory judgment.

18           Once again, Tessera failed to cite a key case to which it was a party:  *Powertech*

19   *Technology Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011), (from which *Powertech*

20   *Technology, Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, was on remand).  The Federal Circuit

21   reversed a district court decision declining to exercise declaratory judgment jurisdiction over an

22   action asserting that a patent license issued by Tessera barred an ongoing ITC proceeding and a

23   parallel district court case, both filed by Tessera.  660 F.3d at 1308.  The Federal Circuit held that

24   a proper basis for exercising declaratory judgment jurisdiction existed due to the underlying

25   dispute between Tessera and Powertech about whether certain of Powertech's products infringed

26   or were licensed.  *Id.*

27           The same reasoning applies in this case.  To abstain under these circumstances would be a

28   misuse of the discretion granted by the Declaratory Judgment Act.

1

### III.    CONCLUSION.

2        For each of the foregoing reasons, Tessera's motion should be denied.

3

4    Dated: November 27, 2017                    MORRISON & FOERSTER LLP

5

6                                          By:    /s/ Jack W. Londen
                                                  Jack W. Londen
7
                                                  Attorneys for Plaintiff
8                                                 TAIWAN SEMICONDUCTOR
                                                  MANUFACTURING COMPANY
9                                                 LIMITED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28